87 So.2d 339 (1956)
Agnes Gillen BEADLE, Plaintiff-Appellant,
v.
MASSACHUSETTS BONDING & INSURANCE CO., Defendant-Appellee.
No. 4199.
Court of Appeal of Louisiana, First Circuit.
April 27, 1956.
Rehearing Denied May 25, 1956.
Adams & Reese, Pat F. Bass, New Orleans, for appellant.
Brumby, Aycock, Horne & Caldwell, Franklin, for appellee.
TATE, Judge.
The widow of Garrett John Beadle sues for Louisiana workmen's compensation allegedly due for his accidental death while employed by defendant's insured. Defendant appeals from judgment in favor of plaintiff widow.
Defendant urges reversal on the ground that, since the deceased employee was a seaman, sole remedies available are within the federal admiralty or maritime jurisdiction, which excludes the recovery allowed under the Louisiana Workmen's Compensation Act.
On December 2, 1953, Beadle was drowned while on an errand for his employer, George Williams. Williams operated several small boats under contract to supply from his Morgan City base various "on the water" drilling sites for various oil companies. Decedent had been employed for several years prior to his death as pilot, deckhand, and sole member of the crew of the towboat, M. V. Frisco. This *340 craft, 48' in length, was used to haul supplies to drilling sites on West Lake Verret.
The Frisco plied the navigable waters of the United States. Because of this fact and the nature of Beadle's duties, it is unquestioned that Beadle was a "seaman" as defined by admiralty and maritime law.
Decedent was drowned on the Atchafalaya River, a navigable water, while operating his personally owned small outboard motor boat. It is unknown why he fell therefrom. At the time of his death, Beadle was on behalf of his employer seeking a replacement to operate the "Frisco" during Beadle's vacation.
Beadle's employment was within the protection of our Louisiana Workmen's Compensation Act, LSA-R.S. 23:1021 et seq., under the specific terms thereof, which lists among the hazardous occupations included within the coverage of the Act: "The operation, construction, repairs, removal, maintenance and demolition of railways and railroads, vessels, boats, and other water crafts," LSA-R.S. 23:1035 (Italics ours).
In an extremely able brief, defendant-appellant urges that it is not within the constitutional power of any State to include maritime employees within the protection of the State's workmen's compensation statute, citing Southern Pacific Co. v. Jensen, 1917, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086, and the body of jurisprudence thereunder, including Swan v. Baton Rouge Transportation Company, La.App. 1 Cir., 197 So. 191, decided by this Court in 1940.
Basically, this claim to exclusive federal remedy is founded on the provision of Article III, § 2, U. S. Constitution that the judicial power of the federal government "shall extend to * * * all Cases of admiralty and maritime Jurisdiction".
The Swan case excellently summarizes the jurisprudence prior to its rendition, and the basic rationale thereof; that State compensation acts attempting to provide a remedy to maritime employees for injuries within the State "had the effect of working material prejudice to the characteristic features of the federal maritime law and interfered with the proper harmony and uniformity of the law in its international and interstate relations", 197 So. 192.
At the same time, however, it was recognized that maritime workers could properly recover under the State compensation acts, if such recovery would not work material prejudice to necessary uniformity in administration of maritime law, Dourrieu v. Board of Commissioner, La.App., 158 So. 581; see also Sidney v. Lykes Brothers S. S. Co., La.App., 8 So.2d 550. See also: 1 Am.Jur. 575, Verbo "Admiralty", Section 50; see 2 C.J.S., Verbo Admiralty, § 62b, p. 125.
In the previously cited Swan case, 197 So. 191, this court commented on the strong dissents from the Jensen doctrine, the "harsh and unsatisfactory results" caused by application thereof, and the tendency of the courts to limit the case. Subsequently thereto, our United States Supreme Court in Davis v. Department of Labor, 1942, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (with one Justice dissenting) substantially modified the approach of the Jensen decision. We note that all United States Supreme Court decisions, and practically all other cases, cited to us by appellant were decided before the Davis decision.
In the Davis case, our Supreme Court discussed the basic unworkability of a strict construction of the Jensen rule, as follows:
"The very closeness of the cases cited above and others raising related points of interpretation has caused much serious confusion. It must be remembered that under the Jensen hypothesis, basic conditions are factual: Does the state law `interfere with the proper harmony and uniformity of' maritime law? Yet employees are asked to determine with certainty before bringing their actions that factual question over which courts regularly divide among themselves and within their own membership. As penalty for error, the injured individual *341 may not only suffer serious financial loss through the delay and expense of litigation, but discover that his claim has been barred by the statute of limitations in the proper forum while he was erroneously pursuing it elsewhere. See e. g., Ayers v. Parker, D.C., 15 F.Supp. 447. Such a result defeats the purpose of the federal act, which seeks to give `to these hardworking men, engaged in a somewhat hazardous employment, the justice involved in the modern principle of compensation', and the state acts such as the one before us which aims at `sure and certain relief for workmen.'" 317 U.S. 254, 63 S.Ct. 228.
As a solution to the problem, the Court offered the now famous "twilight zone" doctrine, stating that:
"There is, in the light of the cases referred to, clearly a twilight zone in which the employees must have their rights determined case by case, and in which particular facts and circumstances are vital elements. That zone includes persons such as the decedent who are, as a matter of actual administration, in fact protected under the state compensation act." 317 U.S. 256, 63 S.Ct. 229.
As a guide to the future, the Court concluded with this observation:
"Under all the circumstances of this case we will rely on the presumption of constitutionality in favor of this state enactment; for any contrary decision results in our holding the Washington act unconstitutional as applied to this petitioner. A conclusion of unconstitutionality of a state statute can not be rested on so hazardous a factual foundation here any more than in the other cases cited." 317 U.S. 258, 63 S.Ct. 230.
Implicit in this decision, and explicitly stated by Mr. Justice Frankfurter's concurring and Mr. Chief Justice Stone's dissenting opinions, is that the employee's choice of either the federal or the State remedy will be sustained where the two remedies overlap.
As stated by In Moores' Case, 323 Mass. 162, 80 N.E.2d 478, 480, allowing a maritime recovery under a State compensation act:
"Mr. Justice Frankfurter says that `Theoretic illogic is inevitable so long as the employee * * * is permitted to recover' at his choice under either act. [Davis v. Department of Labor] 317 U.S. at page 259, 63 S.Ct. at page 230. Probably therefore our proper course is not to attempt to reason the matter through and to reconcile previous authorities, or to preserve fine lines of distinction, but rather simply to recognize the futility of attempting to reason logically about `illogic,' and to regard the Davis case as intended to be a revolutionary decision deemed necessary to escape an intolerable situation and as designed to include within a wide circle of doubt all water front cases involving aspects pertaining both to the land and to the sea where a reasonable argument can be made either way, even though a careful examination of numerous previous decisions might disclose an apparent weight of authority one way or the other. We can see no other manner in which the Davis case can be given the effect that we must suppose the court intended it should have, and we must assume that the court intends to follow that case in the future."
This case was affirmed by a per curiam decision of the United States Supreme Court, Bethlehem Steel Co. v. Moore, 1948, 335 U.S. 874, 69 S.Ct. 239, 93 L.Ed. 417. Soon thereafter a contrary California court decision was reversed by a per curiam decision, referring to the Moore case, Baskin v. Industrial Accident Comm., 1949, 338 U.S. 854, 70 S.Ct. 99, 94 L.Ed. 523. Thus, since the Davis case, the United States Supreme Court has continued to sustain the employees' choice of remedy where no material prejudice is worked to any feature of the general maritime law.
*342 In oral argument, appellant strongly urged that the "twilight zone" doctrine only applies as between longshoremen (and not seamen) on the one hand, and land workers on the other. It is true that most of the cases do concern longshoremen rather than seamen. But the jurisprudence in this regard uniformly hinges, not upon distinctions between various types of maritime employees, but upon the maritime employee's choice of the State compensation remedy as against the overlapping federal remedy available.
All these federal remedies, whether for seamen or for longshoremen and harbor workers, stem from the identical clause in the United States Constitution conferring jurisdiction in admiralty and maritime matters upon the federal government. There appears to be no sound reason in general theory why the "twilight zone" approach should be limited to longshoremen. Of course, in particular instances, it is much more likely that a seaman's choice of the State remedy might materially interfere with the uniformity of the admiralty law in its international and interstate relations, than that a longshoreman's might do so.
In Maryland Casualty Co. v. Toups, 5 Cir., 1949, 172 F.2d 542, a seaman's widow was permitted to recover under the Texas Workmen's Compensation Act. No distinction whatsoever was made that the decedent was a seaman rather than a longshoreman. Writs of certiorari were denied by the United States Supreme Court, 1949, 336 U.S. 967, 69 S.Ct. 939, 93 L.Ed. 1119.
The following remarks and holdings therein are extremely applicable to the present suit, 172 F.2d 546:
"The deceased, under the holdings of the Supreme Court in Norton v. Warner [Co.], 321 U.S. 565, 64 S.Ct. 747, 88 L.Ed. 430, was, no doubt, a seaman on a vessel engaged in navigation and in aid of navigation, whose heirs, in the absence of an applicable State Workmen's Compensation Act, would be remitted to the Jones Act [46 U.S.C.A. 988] for redress. But since an action under the Jones Act must be grounded upon negligence, and since in the present case no negligence of the employer can be shown, the heirs of the deceased would be without remedy under that Act or in admiralty. Such a result is not imperative unless the invocation of the State Compensation Act would `interfere with the proper harmony or uniformity of that law (admiralty) in its international or interstate relations.' No inharmonious result is here possible. The deceased at the time of his death was working upon the dock making fenders for the use of his small boat. He hauled no interstate or foreign commerce. Neither his vessel nor his work affected the intricate relations that involve the ship, crew, master, owner, cargo, shipper, consignee, or responsibility, or lack of it, under the law of the sea. Neither the activity of the deceased nor the method of compensation agreed upon for his family could have interfered with the proper harmony or the uniformity of the law that prevails, and should prevail, in all substantial relations arising out of maritime commerce, whether interstate or international." (Italics ours.)
In the present case, Beadle was operating his personal motor boat on an errand for his employer at the time of his death. We fail to see how allowing recovery under the Louisiana compensation act, presumed to be constitutional, will work any material prejudice to the characteristic features of admiralty and maritime law, involving the intricate relations between "ship, crew, master, owner, cargo, shipper, consignee, or responsibility, or lack of it, under the law of the sea", 172 F.2d 542.
In able and eloquent argument, counsel for appellant portends chaos and confusion should we permit recovery under the State compensation law for injury sustained by a maritime employee. The premise of this argument is that the federal maritime remedies must be exclusive of the State compensation remedy. In view of the contrary *343 holding of the Davis case, this premise is fallacious. The remedies may overlap; and when they do, as in the present instance, the employee's choice of either will be upheld.
For the above and foregoing reasons, the judgment of the District Court herein is affirmed.
Affirmed.