REID, Judge.
This matter is before this Court on an appeal from summary judgments in favor of defendants International Harvester Company, Baltimore Contractors, Inc., and New Amsterdam Casualty Company.
This is an action brought by the plaintiff Billie Kathryn Eubanks for the use and benefit of her minor daughter, Marilyn Kay Ramey for damages resulting from the death of the minor’s father Jeptha Franklin Ramey, Jr., from whom the plaintiff was divorced.
The decedent’s death occurred while performing diving operations in connection with the construction of an underwater tunnel near Houma, Louisiana. The plaintiff was awarded the care, custody and control of the minor child by the District Court of Cherokee County, Texas on February 18, 1960 and has been appointed guardian of the person and estate of her minor child by the Superior Court of California, County of Los Angeles.
Plaintiff alleged in her petition that on or about January 8, 1960, the decedent was employed by the Underwater Exploration and Salvage Company as a diver in connection with the construction of an underwater tunnel near Houma, Louisiana. She further alleged the defendant Baltimore Contractors, Inc., the insured of the defendant New Amsterdam Casualty Company, was the general contractor for construction of the tunnel and the defendant Underwater Exploration and Salvage Company had entered into an agreement with Baltimore Contractors, Inc. to perform the diving *88 operations and other work in construction of the tunnel. Plaintiff alleged decedent was a seaman and member of the vessel Whirly No. 2 owned by Baltimore Contractors, Inc. She further alleged that on or about January 8, I960, shortly after the deceased descended into the water in his diving outfit which was connected to a compressor, he gave an emergency signal. He was pulled from the water unconscious and died shortly thereafter due to suffocation and lack of air. Plaintiff alleged one of the causes of decedent’s death was the negligence of James Luther Chester, an employee of Baltimore Contractors, Inc., who as an employee was covered by a policy of insurance written by New Amsterdam Casualty Company in favor of Baltimore Contractors, Inc. The alleged negligence of James Luther Chester was his failure to properly attend to the compressor by which decedent’s diving suit was being supplied with air, his failure to see that the compressor was operated properly, or to warn decedent and his co-workers the compressor was not in good operating condition, and in leaving it unattended.
The plaintiff contended an additional cause of the accident was the improper functioning of the compressor which, it was alleged, was manufactured by International Harvester Company. She alleged the International Harvester Company’s negligence consisted of manufacturing the compressor used to furnish air for diving purposes without a warning device and in manufacturing the said compressor with defective materials and warkmanship, particularly a defective choking mechanism. Plaintiff invoked the doctrine of Res Ipsa Loquitur and sued under the Merchant Marine Act, commonly known as the Jones Act, 46 U.S.C. § 688, and as against the defendant, International Harvester Company plead LSA-Civil Code, Article 2315 and other codal articles and statutes, including Workmen’s Compensation.
Other defendants were also brought into the suit who are not before the Court.
Various pleadings were filed which are not of importance here, this matter being before the Court solely on the granting of motions for summary judgments.
On November 28, 1961, the defendant International Harvester Company filed a motion for summary judgment on the ground no genuine issue of fact existed, and attached to the motion for summary judgment affidavits of Eugene Middendorf, Divisional Chief Engineer of International Harvester Company, which affidavit stated International Harvester Company did not manufacture the compressor designated in Article 15 of the petition as Schramm Model U-6, but did manufacture an engine U-6 bearing serial No. UBK-5449 which was shipped to Schramm on February 14, 1947, which engine deponent believed to be a component part of the said compressor. The affidavit further stated deponent had identified the invoice attached to the affidavit designated as Exhibit 1, as being a true and correct copy of the original invoice dated February 14, 1947 showing the engine was ordered by Schramm on August 4, 1946 and shipped to Schramm on February 14, 1947. The affidavit stated International Harvester Company had received no complaints as to the engine since its delivery and the engine had never been in the possession of International Harvester Company since that time for repairs of any sort and that International Harvester Company did not warrant the same was designed for underwater diving.
Also attached to the motion for summary judgment was a report of Shilstone Testing Laboratory dated March 28, 1960 made for Firemans Fund Insurance Company, compensation insurer of Underwater Exploration and Salvage Company. The report concluded that the air compressor delivered to the laboratory from Baltimore Contractors, Inc. was functioning properly and stopped only when the fuel supply was exhausted.
In addition, the depositions of Edwin C. Cubler, Project Manager of Baltimore *89 Contractors, Inc. and of Fernando Lohr, the general superintendent of the job, were filed as part of the record. Mr. Cubler testified the compressor had been acquired for operating air drills, boring drills, chipping hammers, and had not been ordered with the anticipation it would be used in diving operations and he had no knowledge of the compressor ever causing any trouble. The pertinent part of the deposition of Mr. Lohr was that any compressor will stop due to water and condensation. He further stated that a few minutes after the accident the compressor was started again and ran for approximately 2A/¿ to 3 hours and on the next morning they checked the compressor and found nothing out of order.
On March 20, 1962 defendants, New Amsterdam Casualty Company and Baltimore Contractors, Inc., filed a motion for summary judgment on the ground there were no genuine issues of material facts to be decided in this case. The grounds set forth in the motion for summary judgment were that plaintiff’s deceased husband was not an employee of Baltimore Contractors, Inc. at the time of his death, and consequently plaintiff had no cause of action under the Jones Act upon which this suit was brought and plaintiff’s cause of action, if any, is under the Louisiana Workmen’s Compensation Act, LSA-R.S. 23:1021 et seq., which liability is barred by the fact that plaintiff’s deceased former husband’s employer, Underwater Exploration and Salvage Co., Inc. afforded workmen’s compensation coverage and accordingly there is no liability' on the part of Baltimore Contractors, Inc., the principal contractor, to plaintiff under LSA-R.S. 23:1061. Attached to the motion for summary judgment were depositions of Edwin C. Cubler and Fernando Lohr, previously mentioned, and depositions of Paul E. Perry, President of Underwater, and Victor Frenkil, Jr., Office Manager of Baltimore and an affidavit of Edwin C. Cubler. All of these depositions were to the effect the decedent was hired by Paul E. Perry, President of Underwater, and did his job under the direction and control of Underwater and particularly under the direction and control of Paul E. Perry and that Mr. Perry, although giving general instructions on what diving work had to be done by supervisory personnel of Baltimore, directed the divers in their work and exercised personal supervision and control over the deceased. The deceased was carried on the payroll of Underwater and not of Baltimore.
The plaintiff did not offer any opposition by affidavits or depositions, nor contradict in any way the affidavits attached to both motions for summary judgment. Counsel for plaintiff filed no memorandum of authorities in this connection, and no representation was made in opposition to either motion.
. On June 14, 1962 the Court rendered, read and signed a judgment maintaining the motion for summary judgment insofar as Baltimore and New Amsterdam were concerned and on June IS, 1962 rendered, read and signed a judgment maintaining the motion for summary judgment insofar as International Harvester Company were concerned. These judgments were rendered without written reasons. It is from these judgments this appeal has been made.
The first motion discussed herein is that filed by International Harvester Company.
The pertinent allegations set forth in plaintiff’s petition in regard to the liability of the defendant International Harvester Company are set forth in paragraphs 23, 24, and 26 of plaintiff’s petition as follows:
“That the said accident was further caused by the negligence of the defendant, International Harvester Company, in manufacturing the aforesaid compressor which was used to furnish air for diving purposes without a warning device to signal its stoppage and in manufacturing the aforesaid compressor with defective material and workmenship, particularly a defective choking mechanism, which negligence was a proximate cause of the accident.” *90 “That defendant International Harvester Company warranted the machinery as being without defects and vices and fit for its intended purpose.” “That insofar as they are applicable directly or in the alternative the statutes of Louisiana, particularly Art. 2315 and the other codal articles, and other statutes, including Workmens Compensation, are specially pleaded herein, insofar as defendant Inter- ■ national Harvester Company is concerned.”
As already shown, it was borne out by the motion for summary judgment filed by International Harvester and the accompanying affidavits that the defendant did not manufacture the compressor as alleged in paragraph 23 of plaintiff’s petition and defendant’s only connection with the compressor was the sale of the motor some 14 years previous and during this entire time the defendant had received no complaints regarding the engine and the defendant had not warranted or advertised that the engine was designed or manufactured for use in underwater diving operations nor are there any facts showing the engine was defective in either material or workmanship at the time of the accident, having been tested by the Shilstone Testing Laboratory, a reputable testing laboratory, and found to be in working order. None of these facts were contradicted by the plaintiff.
It was also shown that the owner of the compressor had not purchased the compressor for any purpose associated with diving operations.
The basis of the plaintiff’s argument on this appeal is conceding no question of fact exists with respect to defendant’s negligence in the manufacture of its gasoline engine, there remains a question of fact relative to defendant’s negligence in the design of its product under LSA-Civil Code, Article 2315; this point was never raised by International Harvester’s motion and, accordingly, never passed upon by the Trial Court in dismissing plaintiff’s suit; and, therefore, a summary judgment cannot be granted unless it is clear that there are no grounds upon which plaintiff can recover and since plaintiff can assert a valid cause of action against defendant on the basis of negligent design, the judgment below was erroneous. The statement of the plaintiff that the question of defendant’s negligence in design was not raised on the motion for summary judgment is not borne out by an examination of the motion for summary judgment and the attached affidavits.
The affidavit of Mr. Middendorf specifically states International Harvester did not warrant the engine model U-6 was designed to be used in underwater diving operations, nor did the defendant ever make any representation or advertisement in that regard. It is, therefore, clear that there were as many facts before the Trial Court on the motion for summary judgment relative to design as to negligent manufacture.
The basis of the plaintiff’s claim for negligent design is because of the foreseeability of injuries resulting from the stopping of a gasoline engine. Plaintiff contends International Harvester was obliged to provide a warning device on its engine and therefore the Company was negligent in failing to provide such warning device.
It is the opinion of this Court that the plaintiff has not shown the existence of a genuine disputed fact upon which she could base a claim of negligence upon the part of the defendant, International Harvester Company, either in its manufacture or design of an engine which it manufactured some 14 years prior to the accident and which it sold to a company which manufactured a compressor. It is undisputed International Harvester had no control over the manufacturer of the compressors or their use, and it is undisputed that during this 14 year period no complaint concerning the operation or design of the engine was ever received by the manufacturer. The allegation by plaintiff that International *91 Harvester was negligent in failing to fore■see that an engine manufactured by it ■might be used on a compressor which might possibly be used in connection with underwater diving operations and the allegation the manufacturer should have incorporated as part of the engine a device to give warning when the engine ceased to run is not the establishment of a material fact which would indicate any breach of ■duty owed the plaintiff by International Harvester under LSA-Civil Code, Article .2315.
There must be some evidence showing the existence of material fact and the mere allegation that a material fact does -exist will not suffice to oppose a motion for a summary judgment.
The statement of the Court in the case •of Bruce v. Travelers Insurance Co., 266 F.2d 781 (5th Cir.1959) is appropriate to the case at issue:
“The non-moving party has failed or is unable to controvert this evidence with affidavits or depositions of his own. He has made no effort to show how he expects to prove his case, contenting himself with the bare allegations in the pleadings * * *. This is not enough to create a ‘genuine issue of material fact.’ ” See also Boyce v. Merchants Fire Insurance Co., 204 F.Supp. 311, 314 (D.Conn.1962).
The plaintiff filed no counter affidavits and it must be assumed there was no dispute with respect to the facts set forth in the affidavits and other documents upon which defendant relied in support of his motion for summary judgment. Goodart v. Maryland Casualty Company, La.App., 139 So.2d 567, 570. Rushing v. Weyerhaeuser Company, La.App., 144 So.2d 420. The pleadings do not indicate any genuine issue of fact in regard to either the negligent design or manufacture of the engine in question which would contradict the facts set forth in the affidavits and other documents upon which the motion for summary judgment was based. Therefore, defendant International Harvester is entitled to a judgment dismissing it from the suit.
New Amsterdam Casualty Company and Baltimore Contractors, Inc. maintained in their motion for summary judgment that the only cause of action stated by the plaintiff was under the Jones Act which was not applicable to the defendants herein as the undisputed facts show decedent was not an employee of Baltimore Contractors, Inc., and plaintiff’s cause of action, if any, was under the Louisiana Workmen’s Compensation Statute which was not applicable to the defendants because the decedent’s employer, Underwater Exploration and Salvage Co., Inc. afforded Workmen’s Compensation coverage.
There is no dispute as to the decedent’s employment for it is apparent from plaintiff’s brief that she now concedes this point. It is also undisputed that decedent’s employer, Underwater Exploration and Salvage Co., Inc., is affording Workmen’s Compensation coverage and there is no liability in that regard insofar as Baltimore Contractors, Inc. is concerned.
In both the original and supplemental briefs plaintiff contends her petition sets forth a second cause of action against the defendants New Amsterdam Casualty Company and Baltimore Contractors, Inc., a cause of action in Maritime tort, which said cause of action is brought under the general maritime law “Unseaworthiness” available to plaintiff by virtue of decedent’s maritime employment covered by the Longshoremen’s and Harbor Workers’ Compensation Act, 33 U.S.C. § 901 et seq. Plaintiff further contends that by virtue of this allegation she is entitled to proceed against third parties, the defendants herein, by maritime tort. Plaintiff further maintains that as her right to sue under general maritime law was not before the Trial Court in the motion for summary judgment, the judgment of the Trial Court stating that there was no genuine issue of material fact to be decided, was only a partial judg *92 ment based on a consideration of the affidavits, pleadings and depositions relating to plaintiff’s claim under the Jones Act, and under a recent decision of the Third Circuit Court of Appeal in Beckham v. Hartford Accident & Indemnity Company, 137 So.2d 99 (1962), a partial disposition of an action under a summary judgment is not permitted.
The allegations of plaintiff’s petition which she maintains set forth this cause of action are as follows:
“18.
“Petitioner now shows that shortly after the said Jeptha F. Ramey, Jr., descended into the water in his diving outfit which was connected to the compressor hereinabove described, he gave an emergency signal for assistance, whereupon his co-employees, after some delay, pulled him from the water.”
“22.
“That the accident aforesaid was further caused by the negligence of the said James Luther Chester, the operator of the compressor, in failing to warn the deceased and his co-employees that the said compressor was not in proper operating condition and in allowing the said Jeptha Franklin Ramey, Jr. to descend into the water and to remain there after the compressor had ceased operation; that James Luther Chester was further negligent in leaving the compressor unattended which acts of negligence were a proximate cause of the accident.”
“29.
“Your petitioner now shows that on and prior to January 8, 1960, there was in full force and effect by the payment of premiums and otherwise a policy of public liability insurance issued by the defendant, New Amsterdam Casualty Company, in favor of Baltimore Contractors, Inc., its agents, and employees and particularly the defendant, James Luther Chester, under the terms of which policy it agreed to insure and indemnify the defendant against any and all liability as a result of his negligence and accordingly, said insurer is a proper defendant herein.”
Plaintiff argues that in determining the status of an employee coming within the Longshoremen’s Act or the State Workmen’s Compensation Statute, the Court must necessarily base its findings upon consideration of factual issues, namely the location of the injury, the nature of the employment, whether or not the decedent was engaged in maritime employment, and whether or not the accident occurred in navigable waters or on dry land.
Cases are cited by plaintiff for the purpose of showing the decedent’s employment would be classified as maritime and would indicate that he would come under the Longshoremen’s and Harbor Workers’ Compensation Act.
Also cited is the case of Ellis v. Travelers Insurance Co., 241 La. 433, 443, 129 So.2d 729, wherein the Louisiana Supreme Court held that a longshoreman employed on navigable waters was covered by the Federal Longshoremen’s and Harbor Workers’ Act rather than the Louisiana Workmen’s Compensation Act, and plaintiff contends that in view of the Ellis case her exclusive remedy would not be under the Louisiana Workmen’s Compensation Act which would necessitate a factual determination.
Plaintiff further maintains that in order to hold she was relegated to recovery under the Louisiana Workmen’s Compensation statute, the Court in effect ruled decedent’s employment was unmaritime, which, she maintains, was a disputed fact as his employment was pleaded as being maritime.
In summary, the plaintiff maintains there are facts pleaded which would indicate plaintiff’s sole right of recovery would not be under Workmen’s Compensation but *93 would be under the Longshoremen’s and Harbor Workers’ Act and consequently she would be permitted to maintain an action against a third party in maritime law, which can be maintained in the State Court under Article 2315.
The defendants, while still maintaining the position taken in the motion for summary judgment argue if the plaintiff stated a cause of action under the maritime law, which they deny, this problem would still fall under the second portion of defendant’s motion for summary judgment wherein it was stated any cause of action against Baltimore Contractors, Inc. would be under the Louisiana Workmen’s Compensation statute, as the decedent, while working for Underwater as a diver inside the coffer dam, was not a seaman and would not come under the Longshoremen’s and Harbor Workers’ Act. Defendants cite as authority for this position the cases of Millers’ Indemnity Underwriters v. Braud, 270 U.S. 59, 46 S.Ct. 194, 195, 70 L.Ed. 470 (1962); Jeffers v. Foundation Co., 85 F.2d 24 (2d Cir. 1936); Massman Construction Co. v. Bassett, 30 F.Supp. 813 (D.C.Mo.1940), rev. on other grounds, 8 Cir., 120 F.2d 230; Central Engineering Co. v. Bassett, 42 F.Supp. 750 (D.C.Ill.1941), all of which purportedly held that a diver injured while working on the floor inside a coffer dam engaged in construction work is covered solely and exclusively by the state workmen’s compensation statute and that he has no cause of action under the Longshoremen’s Act or in maritime tort. In the Miller case, which the defendant cites as the leading case, the Court held:
“ * * * while employed as a diver by the National Shipbuilding Company, he submerged himself from a floating barge anchored in the navigable Sabine river 35 feet from the bank, for the purpose of sawing off the timbers of an abandoned set of ways, once used for launching ships, which had become an obstruction to navigation. While thus submerged, the air supply failed, and he died of suffocation. * * * “Plaintiff in error insists that the claim arose out of a maritime tort, that the rights and obligations of the parties were fixed by the maritime law, and that the state had no power to change-these by statute or otherwise. * * *
“In the cause now under consideration the record discloses facts sufficient to-show a maritime tort to which the general admirality jurisdiction would' extend save for the provisions of the state Compensation Act; but the matter is of mere local concern and its-regulation by the state will work no material prejudice to any characteristic feature of the general maritime law. The act prescribes the only remedy; its exclusive features abrogate the right to resort to the admiralty court which otherwise would .exist.”
The defendants, therefore, take the position that under the undisputed facts, and the law as set forth in the cases cited above, and particularly the Miller case, plaintiff’s cause of action would be restricted to the Louisiana Workmen’s Compensation Statute, and that as alleged in the motion for summary judgment there are no material facts at issue and the judgment should stand.
Plaintiff answers this contention by citing Calbeck v. Travelers Insurance Company, 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962) as authority for the proposition of excluding the local concern doctrine upon which she maintains the Miller case was cited, and further quotes the case of Holland v. Harrison Brothers Dry Dock and Repair Yard, 306 F.2d 369 (5 Cir. 1962), wherein an employee of Harrison Brothers was injured while on land when he lifted a heavy hose which lay on the ground perpendicular to a barge and he was permitted recovery under the Longshoremen’s Act. Plaintiff argues that as a worker injured on dry land is covered by the Longshoremen’s .Act, as in the Holland case, it would follow that the decedent herein, who was a diver performing tasks within nav *94 igable waters, would, under both the Cal-beck and Holland cases fall within the scope of the Longshoremen’s Act and the Miller case no longer controls.
Considering the conflict between authorities cited by the plaintiff and the defendants, if the plaintiff has stated an additional cause of action under maritime tort law, it is this Court’s opinion that there are genuine issues of disputed facts involved in this case.
From an examination of the portions of plaintiff’s pleadings quoted above, it is apparent that plaintiff has set forth a cause of action under maritime law, and it is apparent to this Court that plaintiff’s contention that such factual matters as the nature of the decedent’s employment, the locale of the accident, the question of whether or not the decedent was injured -on dry land or in navigable waters or, as •described in the Calbeck case, in the “twilight zone”, are all factual matters in dispute. To maintain this summary judgment under these circumstances would be contrary to both the Act and the jurisprudence interpreting the Act and would deprive the plaintiff of the right of trial on the merits on factual issues.
This Court is mindful of the fact, as stated above, that the failure of the plaintiff to file counter affidavits presumes there is no dispute with respect to the facts set forth in the affidavit and other documents upon which defendants rely in support of the motion for summary judgment. The distinction in connection with the motion for summary judgment granted in favor ■of Baltimore Contractors, Inc., and New Amsterdam Casualty Company is that the pleadings in this instance clearly raise issues of disputed facts, which was not the case in the judgment granted in favor of International Harvester.
For the above and foregoing reasons the motion for summary judgment insofar as International Harvester is concerned is affirmed, while the motion for summary judgment insofar as Baltimore and New Amsterdam are concerned is reversed, and the case remanded to the District Court, cost of the appeal to be borne one-half by the appellant, Billie Kathryn Eubanks, for the use and benefits of the minor Marilyn Kay Ramey, and one-half by the defendants, New Amsterdam Casualty Company and Baltimore Contractors, Inc.
Affirmed in part and reversed in part.