365 So.2d 1192 (1978)
Joseph W. BEARDEN, Plaintiff-Respondent,
v.
LEON C. BREAUX TOWING CO., INC., et al., Defendant-Relators.
No. 6896.
Court of Appeal of Louisiana, Third Circuit.
December 20, 1978.
Writ Refused January 26, 1979.
Hall, Lestage & Lestage, David R. Lestage, DeRidder, for defendants-relators.
Stephen E. Everett, Alexandria, for plaintiffs-respondents.
Before WATSON, GUIDRY and CUTRER, JJ.
WATSON, Judge.
Plaintiff, Joseph Bearden, instituted this action for workmen's compensation benefits under LSA-R.S. 23:1021, et seq. against his employer, Leon C. Breaux Towing Co., Inc., and its insurer, Travelers Insurance Company. Bearden alleged that he suffered injuries while working as captain of a vessel operating on the Intracoastal Canal. The defendants filed exceptions of, among others, no subject matter jurisdiction and no cause of action; alleging that plaintiff's federal remedy was exclusive. The trial judge overruled the exceptions, holding in effect that plaintiff had a cause of action under the Louisiana Workmen's Compensation Act. Utilizing the "savings to suitors" clause[1], the trial court held that the Jones Act provided plaintiff with an option to maintain an action for state compensation benefits. Doubting the validity of this ruling, *1193 we granted writs under our supervisory jurisdiction. Article V, § 10, Louisiana Constitution of 1974.
Bearden was employed by Breaux Towing as the captain of one of their seagoing tows, the "Eileen B". All parties agree that Mr. Bearden is classified as a "seaman" under the Jones Act. It is further undisputed that plaintiff suffered a stroke, rendering him disabled, while he was piloting the "Eileen B" upon navigable waters of the United States.[2]
The sole issue presented to this court is whether a "seaman" has an optional supplementary state workmen's compensation cause of action for an injury which occurred within the scope of his employment on navigable waters.
The historical development of our national maritime law has greatly obfuscated the proper resolution of this issue. The landmark decision dealing with the availability of state compensation laws to maritime employees is the old but still valid case of Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917). In Jensen, a worker was fatally injured on the gangway between ship and shore. He was not covered under the Jones Act or, at that time, any other federal laws. An attempt to invoke state workmen's compensation was constitutionally challenged as being beyond the power of the state to provide. The United States Supreme Court held that state workmen's compensation laws conflicted with general maritime laws and were therefore inoperative on the navigable waters of the United States. In reaching such a decision, the court concluded that the statutory "savings to suitors" clause did not extend to workmen's compensation remedies since this remedy was "of a character wholly unknown to the common law . . . [and] not saved to suitors on the grounds of exclusive jurisdiction."[3]
After Jensen, Congress amended the "savings to suitors" clause by adding a phrase purporting to preserve "to claimants the rights and remedies under the workmen's compensation law of any State." 40 Stat. 395 (1917). This attempt to legislatively overrule Jensen was thwarted, however, by Knickerbocker v. Stewart, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834 (1920), where the United States Supreme Court found the amendment to be unconstitutional. This further made it clear that even Congress could not negate the exclusive grant of maritime jurisdiction by attempting to delegate its powers to the states.[4] Appropriately, the Louisiana Supreme Court, in Apperson v. Universal Services, 153 So.2d 81 (La. App. 1st Cir. 1963), recognized that the "Courts, no less than the Congress, are restricted by the Constitution of the United States." 153 So.2d 86. If Congress cannot constitutionally bring seamen within the scope of state workmen's compensation laws, neither can the Louisiana legislature or courts.
The Jensen decision left longshoremen injured on the landward side of the pier with a possible state workmen's compensation remedy, but in the absence of federal legislation, not covered when they stepped from the pier onto the gangplank. This gap at the gangplank was statutorily cured in 1927 by amendments to the Longshoreman's and Harbor Worker's Compensation Act *1194 (LHWCA).[5] in Davis v. Dept. of Labor, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246, the Supreme Court espoused the "Twilight Zone" doctrine which enabled an injured waterfront worker to elect between the federal LHWCA and the state remedies in cases where there was much doubt as to which set of laws would apply. The court did not apply this concept to cases arising under the Jones Act.
In Beadle v. Mass. Bonding & Ins. Co., 87 So.2d 339 (La.App. 1st Cir. 1956), the First Circuit found "no sound reason in general theory why the `twilight zone' approach should be limited to longshoremen" (87 So.2d 342) under the LHWCA. Applying this reasoning, the court went on to find that a Jones Act seaman could recover under either state or federal remedies. Later, the same circuit overruled Beadle in Apperson v. Universal Services, supra. The court in Apperson held that when a "seaman" is petitioning for compensation it is:
". . . impossible not to conclude the redress for such injury is exclusively vested by the Constitution of the United States in the federal courts and Plaintiff must seek redress under the Jones Act. Clearly there is no twilight zone in which Plaintiff may seek relief under our workmen's compensation law for the factual situation presents an issue where in the Constitution of the United States obliterates the right of the state to grant a seaman injured within the scope of his employment relief under the State Workmen's Compensation Act, making exclusive the Federal Courts the forum to Plaintiff." 153 So.2d 86.
The rationale in Apperson for finding the "twilight zone" doctrine inapplicable to injuries under the Jones Act was obtained from Jensen, Knickerbocker and Ellis v. Travelers Ins. Co., 241 La. 433, 129 So.2d 729 (1961). Although the matter before the court in Ellis involved a jurisdictional question under the LHWCA, recovery was again plagued by the Jensen doctrine. An extensive review of state and federal jurisprudence there led the Louisiana Supreme Court to conclude that the Jensen doctrine had not been overruled by Davis, but that its recognition of possible concurrent jurisdiction in the "twilight zone" was simply a jurisprudential exception to Jensen. Nevertheless, the court in Ellis felt that when the injury actually occurred on the vessel, the federal remedy would preempt a claim under state law.
This latter portion of the Ellis holding was later reversed. Respondent urges that these subsequent modifications of Ellis by Calbeck v. Travelers Ins. Co., 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1961) have substantially emasculated the rationale of Ellis, and returned a breath of life to Beadle. We disagree.
Even though the basic holding of Ellis was modified, Jensen continues to remain valid with recognition of the "twilight zone" exception for longshoremen, but not seamen. Calbeck simply recognized that the "twilight zone" concept allowed coverage under the LHWCA for all longshoremen injured on navigable waters, whether or not that particular injury was constitutionally within the jurisdictional reach of the state as well. In fact, the necessary reasoning was brought about by the Jensen line of cases. The obvious implication is that Jensen is still valid and must be contended with.[6]
In the recent case of Wixom v. Travelers, 357 So.2d 1343 (La.App. 4th Cir. 1978), the court held that an ironworker longshoreman injured while repairing a ship on navigable waters had an exclusive federal remedy. There it was noted that the court was not presented with a close case which called *1195 for the application of the "twilight zone" concept but rather a crystal-clear, pure maritime question. As in Wixom, the case presently before this court presents a case which is wholly maritime.
The United States Supreme Court likewise sustained the continuing validity of Jensen in Askew v. American Waterways, 411 U.S. 325, 93 S.Ct. 1590, 36 L.Ed.2d 280 (1973). The court noted that although Jensen had been limited by subsequent holdings of that court, Jensen and its progeny remain to mark isolated instances where state law must yield to the needs of a uniform federal maritime law. See Romero v. International Terminal Operating Co., 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 and Northeast Marine Terminal Co., Inc. v. Caputo, 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977).
Conclusion
Since the line drawn by Jensen still remains, and because we are dealing with a "seaman" who may sue under the Jones Act, it is constitutionally mandated that plaintiff Bearden may not have the benefits of the Louisiana Workmen's Compensation Act. Accordingly, the trial court erred in failing to dismiss Bearden's workmen's compensation claim. This particular case presents a situation which is wholly maritime, far removed from any possible "twilight zone," even if such a zone exists for "seamen." The trial judge also erroneously found the "savings to suitors" clause applicable to plaintiff's attempt to obtain state compensation benefits when it applies only to other more traditional state remedies.
For the reasons assigned, the writs are made absolute, the exception of no subject matter jurisdiction and the exception of no cause of action are sustained and plaintiff's workmen's compensation petition is dismissed. All costs of this proceeding are assessed against plaintiff-respondent.
WRITS MADE ABSOLUTE; EXCEPTIONS SUSTAINED AND PETITION DISMISSED.
NOTES
[1] The meaning of the clause, found in 28 U.S.C. 1333, is obtained by construing it with the Jones Act, 46 U.S.C. 688, saving a right to trial by jury for "damages at law" to seamen who suffer personal injury in the course of their employment.
[2] The stroke occurred on the Intracoastal Waterway, mile 230, as the vessel was approaching the Grand Lake bridge in Calcasieu Parish, La.
[3] Even though the pertinent statutory provisions (cited above in footnote 2) now set forth a somewhat different wording than that found in § 9 of the Judiciary Act of 1789 (the Act which Jensen was construing), a full reading of the current statutes show that the present intent of Congress is to carry forward the same "common law" type options that were explicitly saved in the Judiciary Act. See the Official Historical and Revision Notes under 28 U.S.C. 1333.
[4] The court felt that the object of the Constitution's grant of maritime jurisdiction (in Art. III, § 2, cl. 1) to the national sovereign "was to commit direct control to the federal government, to relieve maritime commerce from unnecessary burdens and disadvantages incident to discordant legislation, and to establish as far as practicable, harmonious and uniform rules applicable throughout every part of the Union." 40 S.Ct. 441.
[5] For further elucidation of the development of the LHWCA as a separate federal remedy, see: Northeast Marine Terminal v. Caputo, 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977); and Poche v. Avondale Shipyards, Inc., 339 So.2d 1212 (La.1976).
[6] Also, see Poche v. Avondale Shipyards, Inc., 339 So.2d 1212 (La.1976), where our Supreme Court traces the history of state workmen's compensation laws as they relate to federal maritime remedies, and in the course of that discussion must contend with the current validity of the Jensen decision.