403 S.E.2d 416 (1991)
INDIANA & MICHIGAN ELECTRIC COMPANY
v.
WORKERS' COMPENSATION COMMISSIONER and Robert B. Ward.
No. 19850.
Supreme Court of Appeals of West Virginia.
February 27, 1991.
*417 Christopher B. Power, Robinson & McElwee, Charleston, for Indiana & Michigan Elec.
Robert L. Stultz, Wilson & Bailey, Weston, for Robert B. Ward.
MILLER, Chief Justice:
Indiana & Michigan Electric Company (Indiana) appeals a ruling of the Workers' Compensation Appeal Board that affirmed a final order of the Workers' Compensation Commissioner (Commissioner), dated April 4, 1989. Indiana contends that the Commissioner erred in holding that Robert Ward, the claimant, was entitled to pursue his occupational hearing loss claim under our Workers' Compensation Act (Act), W.Va.Code, 23-1-1, et seq. The issue on appeal is whether an employee who is a "seaman" under the Merchant Marine Act of 1920, 46 U.S.C.App. § 688, popularly known as the Jones Act, may pursue a claim for benefits under the Act.
Mr. Ward has been employed as a chief engineer for Indiana since 1976. He is responsible for maintaining the engines of motor vessels that transport coal barges along the Ohio and Kanawha Rivers. On March 20, 1986, James Bland, M.D., diagnosed the claimant as suffering from a sensorineural hearing loss caused by prolonged exposure to loud noise.[1] Consequently, Mr. Ward filed a claim for benefits under the Act. On July 9, 1986, the Commissioner ruled the claim compensable. The employer objected on the ground that the Commissioner did not have jurisdiction over claims filed by seamen. Both the Commissioner and the Appeal Board affirmed the Commissioner's ruling of July 9, 1986.
Despite the absence of a particular power in the United States Constitution delegating to Congress the right to enact substantive law regarding admiralty and maritime matters, the Supreme Court has found such power to be implied. In Panama Railroad Co. v. Johnson, 264 U.S. 375, 44 S.Ct. 391, 68 L.Ed. 748 (1924), the Supreme Court, in upholding the validity of the Jones Act, viewed Congress's authority as emanating from its power over interstate and foreign commerce, but conceded as to express constitutional language:
"Although containing no express grant of legislative power over the substantive law, the provision was regarded from the beginning as impliedly investing such power in the United States. Commentators took that view; Congress acted on it, and the courts, including this Court, gave effect to it." 264 U.S. at 386, 44 S.Ct. at 393, 68 L.Ed. at 752.
The Supreme Court did discuss in Panama Railroad Co. another basis for Congress to legislate on maritime matters: Article I, Section 8, Clause 18, delegates to Congress the power "[t]o make all Laws which shall be necessary and proper for carrying into Execution ... all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." This general power, coupled with the delegation of "all Cases of admiralty and maritime Jurisdiction" to the federal courts under Article III, Section 2 of the Constitution, was deemed sufficient to sustain Congress's *418 power to adopt the Jones Act. Subsequently, in Romero v. International Terminal Operating Co., 358 U.S. 354, 360-61, 79 S.Ct. 468, 474, 3 L.Ed.2d 368, 375-76 (1959), the Supreme Court made this statement as to the source of Congress's power in maritime matters:
"Article III, § 2, cl. 1 (3d provision) of the Constitution and Section 9 of the Act of September 24, 1789, have from the beginning been the sources of jurisdiction in litigation based upon federal maritime law. Article III impliedly contained three grants. (1) It empowered Congress to confer admiralty and maritime jurisdiction on the `Tribunals inferior to the supreme Court' which were authorized by Art. 1, § 8, cl. 9. (2) It empowered the federal courts in their exercise of the admiralty and maritime jurisdiction which had been conferred on them, to draw on the substantive law `inherent in the admiralty and maritime jurisdiction,' Crowell v. Benson, 285 U.S. 22, 55 [52 S.Ct. 285, 294, 76 L.Ed. 598, 615 (1932) ], and to continue the development of this law within constitutional limits. (3) It empowered Congress to revise and supplement the maritime law within the limits of the Constitution." (Citations omitted).
See generally 1B S. Friedell, Benedict on Admiralty § 109 (7th rev. ed. 1989).
The Jones Act provides a right to recover damages for seamen who are injured or are killed in the course of their employment.[2] It incorporates the liability standards contained in the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq. (1986), which protects railroad workers engaged in interstate commerce.[3]See, e.g., Panama R.R. Co. v. Johnson, supra; Wallace v. Oceaneering Int'l, 727 F.2d 427 (5th Cir. 1984). See generally 32 Am.Jur.2d Federal Employers' Liability & Compensation Acts § 41 (1982 & Supp.1990).
With the passage of the Jones Act, the question arose as to what extent could state-created causes of action be utilized by seamen.[4] In Lindgren v. United States, 281 U.S. 38, 50 S.Ct. 207, 74 L.Ed. 686 (1930), the Supreme Court considered whether the Jones Act precluded a cause of action brought under a state's wrongful death statute by the personal representative of a seaman. The Supreme Court observed that prior to the enactment of the Jones Act, it had permitted state wrongful death acts to apply "only because Congress had not legislated on the subject." 281 U.S. at 44, 50 S.Ct. at 210, 74 L.Ed. at 691.
The Supreme Court then referred to its decisions regarding injured employees of interstate railroad companies. In those cases prior to the enactment of FELA, the *419 Supreme Court had held that state acts governed because Congress had failed to exercise its superior power under the Commerce Clause:
"[T]he laws of the several States were regarded as determinative of the liability of employers engaged in interstate commerce for injuries received by their employees while engaged in such commerce. But that was because Congress, although empowered to regulate that subject, had not acted thereon, and because the subject is one which falls within the police power of the States in absence of action by Congress." 281 U.S. at 45, 74 L.Ed. at 692, 50 S.Ct. at 210, quoting In Re Second Employers Liability Cases, 223 U.S. 1, 54-55, 56 L.Ed. 327, 348, 32 S.Ct. 169, 177 (1912). (Citations omitted).[5]
The Court in Lindgren then held that once "Congress has acted, the laws of the States, insofar as they cover the same field, are superseded, for necessarily that which is not supreme must yield to that which is." 281 U.S. at 46, 50 S.Ct. at 211, 74 L.Ed. at 692. (Citations omitted). Thus, it concluded that the plaintiff could not sue under the state wrongful death statute and was limited to the Jones Act remedy.[6]See also Gillespie v. United States Steel Corp., 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964); Northern Coal & Dock Co. v. Strand, 278 U.S. 142, 49 S.Ct. 88, 73 L.Ed. 232 (1928).
Where seamen are involved, the general rule appears to be that state causes of action are not able to intrude on the Jones Act. A typical illustration is Meaige v. Hartley Marine Corp., 925 F.2d 700 (4th Cir.1991), which held that the West Virginia tort of retaliatory or wrongful discharge[7] could not be utilized by a seaman against his employer because of "the exclusive nature of federal admiralty law." 925 F.2d at 702. See also Thibodaux v. Atlantic Richfield Co., 580 F.2d 841, 847 (1978) ("[A]n exclusive remedy provision in a state workmen's compensation law cannot be applied when it will conflict with maritime policy and undermine substantive rights afforded by federal maritime law.").
Other state courts have recognized the remedies provided by the Jones Act are exclusive of state compensation statutes when the injured employee is a "seaman."[8]E.g., Anderson v. Alaska Packers Ass'n, 635 P.2d 1182 (Alaska 1981); Occidental Indem. Co. v. Industrial Accident Comm'n, 24 Cal.2d 310, 149 P.2d 841 (1944); Bearden v. Leon C. Breaux Towing Co., 365 So.2d 1192 (La.App.1978), writ denied, 366 So.2d 915 (1979); Valley Towing Co. v. Allen, 236 Miss. 51, 109 So.2d 538 (1959); Garrisey v. Westshore Marina Assocs., 2 Wash.App. 718, 469 P.2d 590 (1970). In Bearden, the claimant was the captain of a commercial vessel who was injured on board the vessel in navigable waters. He sought state workers' compensation benefits, which were granted by the *420 lower tribunal. The appellate court reversed and made this statement:
"Appropriately, the Louisiana Supreme Court, in Apperson v. Universal Services, 153 So.2d 81 (La.App. 1st Cir.1963), recognized that the `Courts, no less than the Congress, are restricted by the Constitution of the United States.' 153 So.2d 86. If Congress cannot constitutionally bring seamen within the scope of state workmen's compensation laws, neither can the Louisiana legislature or courts." 365 So.2d at 1193.
The claimant, however, argues that he is entitled to workers' compensation coverage because of our holding in Ward v. State Workmen's Compensation Commissioner, ___ W.Va. ___, 301 S.E.2d 592 (1983). In Ward, we addressed the relationship between our Workers' Compensation Act and the Longshoremen and Harbor Workers' Compensation Act (LHWCA), and we placed particular reliance on Sun Ship, Inc. v. Pennsylvania, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980). The issue was whether an employee could file a state workers' compensation claim before having a determination of whether his claim was compensable under the LHWCA.
As we pointed out in Ward, the United States Supreme Court recognized in Sun Ship that in 1972 Congress had amended the LHWCA to extend its protection shoreward, i.e., "landward beyond the shoreline of the navigable waters ... [and] ... [i]n so doing, the [LHWCA] became, for the first time, a source of relief for injuries which had always been viewed as the province of state compensation law." 447 U.S. at 719, 100 S.Ct. at 2436, 65 L.Ed.2d at 462. The Supreme Court in Sun Ship concluded that the LHWCA operated concurrently with the state compensation remedy and, thus, it supplemented rather than supplanted the state workers' compensation procedure. However, the Supreme Court did point out that there could not be a double recovery "since employers' awards under one compensation scheme would be credited against any recovery under the second scheme." 447 U.S. at 725 n. 8, 100 S.Ct. at 2439 n. 8, 65 L.Ed.2d at 466 n. 8.[9] (Citation omitted).
The basis for Sun Ship's holding is the overlap between the LHWCA and the state compensation acts. This overlap arises because land-based workers may be engaged in tasks aboard vessels that are moored in navigable waterways. While such workers are performing tasks that are compatible with those traditionally performed by longshoremen or harbor workers, they are able to seek compensation under the LHWCA. They may also obtain state compensation benefits if their work is sufficiently local in nature to come within the state act.
As earlier noted, the Jones Act provides a fault-based tort recovery system patterned after FELA, which is different from the liability without fault which underlies the LHWCA and state workers' compensation acts. Moreover, there is a specific exclusion from coverage under the LHWCA for masters and members of the crew of a vessel.[10] Apparently, this exclusion came about because the seamen considered their remedies under the Jones Act and other general maritime law to be superior to the LHWCA benefits. 1A E. Jhirad & E. Flynn, Benedict on Admiralty § 27 (7th rev. ed. 1990).
Finally, we do not believe that Sun Ship's rationale can be utilized to expose a maritime employer of a "seaman" to liability under our Workers' Compensation Act. *421 There is no language in the Jones Act which suggests that it was intended to complement a state workers' compensation remedy. We have also earlier described the United States Supreme Court's view that the Jones Act has accorded an exclusive procedure for seamen and has rejected attempts by seamen to utilize a state-created remedy.
In view of the above authorities, we conclude that a seaman who receives an injury while working on a vessel in maritime waters is ineligible to file a claim under the West Virginia Workers' Compensation Act, W.Va.Code, 23-1-1, et seq. His remedies lie with the federal maritime law. We, therefore, find that the Workers' Compensation Commissioner and the Appeal Board erred in holding the claim to be compensable. Accordingly, this case is reversed.
Reversed.
NOTES
[1] Indiana does not dispute that Mr. Ward's hearing loss is work related.
[2] 46 U.S.C.App. § 688 (1975) of the Jones Act provides:

"Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located." (Emphasis added).
[3] The United States Supreme Court has held that occupational diseases are compensable under FELA. See Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). Because the Jones Act incorporates the rights and remedies provided under FELA, courts have also found that it covers occupational diseases, including occupational hearing loss. E.g., Barger v. Mayor & City Council of Baltimore, 616 F.2d 730 (4th Cir.), cert. denied, 449 U.S. 834, 101 S.Ct. 105, 66 L.Ed.2d 39 (1980).
[4] The Jones Act does not define the term "seaman." Recently, the United States Supreme Court settled the conflict that existed between several federal courts of appeals as to whether a seaman's work had to aid in the navigation of the vessel. In McDermott International, Inc. v. Jon C. Wilander, ___ U.S. ___, 110 S.Ct. 3212, 110 L.Ed.2d 660 (1991), the Supreme Court held that aiding navigation was not a requirement and all that was necessary was an employmentrelated connection to a vessel in navigation. There is no dispute by the parties as to Mr. Ward's status as a seaman.
[5] Our legislature, by enacting W.Va.Code, 23-2-10 (1975), has recognized Congress's superior right to enact legislation under the Commerce Clause. In speaking of this provision, we stated in Ward v. State Workmen's Compensation Commissioner, ___ W.Va. ___,___, 301 S.E.2d 592, 595 (1983): "Code, 23-2-10 was designed to prevent this state's usurpation of Congress' superior power to regulate interstate commerce[.]" (Citation omitted). In Pritt v. West Virginia Northern Railroad Co., 132 W.Va. 184, 201, 51 S.E.2d 105, 116 (1948), cert. denied, 336 U.S. 961, 69 S.Ct. 891, 93 L.Ed. 1113 (1949), we recognized that in order "to bring an employee within the [West Virginia] compensation laws his work must be clearly separable and distinguished from work in interstate commerce[.]" See also Riley v. West Virginia N.R.R. Co., 132 W.Va. 208, 51 S.E.2d 119 (1948), cert. denied, 336 U.S. 961, 69 S.Ct. 891, 93 L.Ed. 1113 (1949).
[6] In Miles v. Apex Marine Corp., 498 U.S. ___, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), the Supreme Court discussed the interplay among the Jones Act, the Death on the High Seas Act, 46 U.S.C.App. § 761, et seq., and the general maritime tort law. The Court also discussed how analogies are drawn from state damages law.
[7] See Harless v. First Nat'l Bank in Fairmont, 162 W.Va. 116, 246 S.E.2d 270 (1978).
[8] Courts have recognized that whether a person is categorized as a "seaman" is generally a question of fact. E.g., Grimes v. Raymond Concrete Pile Co., 356 U.S. 252, 78 S.Ct. 687, 2 L.Ed.2d 737 (1958). See generally 4 A. Larson, Workers' Compensation Law § 90.22 (1990).
[9] The right to offset is now expressly set out in the LHWCA. See 33 U.S.C. § 903(e) (1986). See Todd Shipyards Corp. v. Director, Office of Workers' Compensation Programs, United States Dep't of Labor, 848 F.2d 125 (9th Cir.1988).
[10] 33 U.S.C. § 902(3)(G) (1986), provides, in part:

"The term `employee' means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker, but such term does not include
* * * * * *
"(G) a master or member of a crew of any vessel[.]"
The term "seaman" is analogous to a master or member of a crew of any vessel. Whittington v. Sewer Constr. Co., 541 F.2d 427 (4th Cir.1976).