Olaf Hendriksen, Appellant, v. City of Chicago, Appellee.

Gen. No. 43,840.

142

Opinion filed January 6, 1947. Released for publication January 20, 1947.

PAUL R. BROWN, of Chicago, for appellant.

BARNET HODES, Corporation Counsel of Chicago, for appellee; J. HERZL SEGAL, Head of Appeals and Review Division and ADAM E. PATTERSON, Assistant Corporation Counsel, of counsel.

MR. JUSTICE FEINBERG delivered the opinion of the court.

Plaintiff appeals from an order of the superior court, dismissing the complaint for insufficiency in an action for personal injuries, and entering judgment for defendant.

Plaintiff was employed as a fireman by defendant on its tugboat, owned and operated by it, self-propelled, and plying the navigable waters of the Chicago River, a tributary of Lake Michigan.

The questions presented for review upon this record are: (1) Does the complaint allege sufficient facts to

bring the plaintiff within the Jones Act and Federal Employers' Liability Act, hereinafter referred to? (2) Is the plaintiff's right to recover governed by the Illinois Workmen's Compensation Act? (3) Is a tugboat, self-propelled, a vessel within the meaning of the Jones Act? (4) Does the doctrine of assumption of risk apply to the plaintiff under the averments in the complaint? We shall discuss these questions in the order stated. None of these questions seem to have been before our courts of review in Illinois so far as our search has gone, and no Illinois case is cited by either side passing upon these questions.

The complaint alleged *inter alia,* that the action was based upon the provisions of the Merchant Marine Act, as amended June 5, 1920, commonly known as the Jones Act, 46 USCA § 688, as well as the Federal Employers' Liability Act, 45 USCA §§ 51–60; that he was a member of the crew of the tugboat "Chicago Harbor No. 4"; that on September 19, 1945, said tugboat was docked at the Chicago Avenue Pier of defendant, on said navigable waters, and that plaintiff, in line of duty, was breaking up large lumps of coal in the firehold with the aid of a coal maul, made necessary because the pieces of coal were too large to enter the firebox for firing the furnace; that while breaking one of the large lumps, a chip of said lump struck by plaintiff with said maul struck plaintiff in the left eye, resulting in the loss of said eye; that defendant negligently and carelessly failed to furnish plaintiff with a reasonably safe place in which to perform his duties; that defendant was negligent and careless in using run-of-mine coal instead of standard coal, well knowing that said large lumps of coal were too large for the firebox and would require plaintiff to use a coal maul to break it up in order to use it for the furnace; that defendant was negligent and careless in failing to furnish goggles to protect plaintiff's eyes, well knowing of the danger resulting from the use of a maul in break-

ing up the large lumps of run-of-mine coal; that plaintiff demanded of defendant that it furnish him with goggles to protect his eyes when breaking up the coal and, although requested to so furnish said goggles, defendant neglected to equip the said tugboat with goggles or to furnish plaintiff with said protection, well knowing that breaking up said large, hard lumps of coal, without goggles, would endanger life and limb and especially the eyes of plaintiff; that as a result of the aforesaid negligence, and as a proximate cause, plaintiff's eye was injured, which resulted in its removal; that plaintiff has suffered loss of income, has suffered pain and injury, and will suffer future loss of earnings as a direct result of the loss of said eye.

Before the Jones Act, seamen and members of a crew, injured in line of duty, were limited to the right to recover under admiralty law, for wages, maintenance and care. *The Osceola,* 189 U. S. 158. The right to recover was greatly enlarged by the Jones Act, which provides:

"Sec. 20. Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply. . . ."

The language in this section—"*and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway* employees shall apply", (Italics ours)—extends the benefit of the Federal Employers' Liability Act governing railway employees to seamen or members of the crew.

Plaintiff exercised his election granted in this section, by bringing the action under the **Jones Act and** the Federal Employers' Liability Act. The applicable

portion of the Federal Employers' Liability Act, 45 USCA § 51, p. 118 is as follows:

". . . shall be liable in damages . . . for such injuries or death resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier or by reason of any defect or *insufficiency* due to its negligence in its cars, engines, appliances, machinery, track, roadbed, works, *boats, wharves or other equipment.*" (Italics ours.)

 The Jones Act applies to a municipality when it owns and operates a tugboat like the one in question. *Pariser v. City of New York,* 146 F. (2d) 431; *Jacob v. City of New York,* 315 U. S. 752.

 There has been a progressive development in the law for the protection of those in maritime service who are injured in line of employment. Under the ancient maritime law, the seaman was limited in his claim for personal injuries to the unseaworthiness of his vessel. Later, his right was extended so that defective appliances on the vessel came within the category of unseaworthiness of the vessel. At present, under the Jones Act and Federal Employers' Liability Act, the charge of negligence, when made in a complaint, does not require any charge that the vessel was unseaworthy. *Pariser v. City of New York,* 146 F. (2d) 431; *Jacob v. City of New York,* 315 U. S. 752.

An interesting and noteworthy statement of the gradual extension of this protection, for personal injuries sustained in line of duty, can be found in *The Osceola,* 189 U. S. 158, and *O'Donnell v. Great Lakes Dredge & Dock Co.,* 318 U. S. 36. Longshoremen, stevedores and kindred class of employees, who were not considered seamen or members of a crew, were given protection by the Act of Congress, passed March 4, 1927, known as the Longshoremen's and Harbor Worker's Compensation Act, 33 USCA §§ 901–950.

Earlier, by its Act of June 10, 1922, 42 U. S. Statutes 634, Congress undertook to protect those engaged in maritime work, but not included in the class of seamen or members of a crew, for injuries in line of duty, by giving them the remedy provided for in the workmen's compensation law of the State where the accident occurred. This Act was held unconstitutional by the Supreme Court of the United States in *Southern Pac. Co. v. Jensen,* 244 U. S. 205; *Knickerbocker Ice Co. v. Stewart,* 253 U. S. 149; and *State of Washington v. W. C. Dawson & Co.,* 264 U. S. 219. It was held in those cases that Congress had no power to entend the laws of the several states, providing for compensation, to those in the maritime service, since that power was delegated exclusively to Congress by the Constitution. In *State of Washington v. W. C. Dawson & Co.,* it was said (p. 225):

"To say that because Congress could have enacted a compensation act applicable to maritime injuries it could authorize the States to do so as they might desire, is false reasoning. Moreover, such an authorization would inevitably destroy the harmony and uniformity which the Constitution not only contemplated but actually established—it would defeat the very purpose of the grant."

Certainly, by the same token, the Illinois Workmen's Compensation Act could not reach, include nor govern the claims of seamen or members of the crew of a vessel on navigable streams, injured in line of duty. The trial court was in error when it held that the provision of the Illinois Workmen's Compensation Act was the one under which plaintiff should seek his remedy. It was following these decisions by the Supreme Court of the United States that Congress passed the Federal Compensation Act for longshoremen and harbor workers, already referred to.

A tugboat, such as the one described in the complaint, comes within the definition of a vessel under

the Jones Act. In *Norton v. Warner Co.*, 321 U. S. 565, it was held that a barge without motive power of its own is a vessel, and that "vessel" is defined by section 3 of the Revised Statutes of the United States, 1 USCA § 3, to include every description of water craft or other artificial contrivance used, or capable of being used, as a means of transportation on water. The fact that the tug was tied to the dock does not prevent the liability from applying. *The Edith Godden*, 23 Fed. 43; *Johnson & Co. v. Johansen*, 86 Fed. 886; *Seas Shipping Co., Inc. v. Sieracki*, 66 Sup. Ct. 872.

The contention that the complaint, on its face, clearly shows that the plaintiff assumed the risk and was barred by the doctrine of assumption of risk, we deem without merit. It is fully disposed of by *Tiller v. Atlantic Coast Line R. Co.*, 318 U. S. 54, which dealt with the construction of the 1939 amendment to the Federal Employers' Liability Act, wherein it was said:

"We hold that every vestige of the doctrine of assumption of risk was obliterated from the law by the 1939 amendment, and that Congress, by abolishing the defense of assumption of risk in that statute, did not mean to leave open the identical defense for the master by changing its name to 'non-negligence.' "

It was not necessary to allege in the complaint that the plaintiff and defendant were engaged in interstate commerce at the time of the injury, since it is sufficiently alleged in the complaint that he was employed as a member of the crew in the capacity of fireman, on a tugboat plying on the navigable waters of the United States, namely, the Chicago River, which brings the parties clearly within the operation of the Jones Act.

We believe that the allegations in the complaint set up a sufficient charge of negligence on the part of defendant, proximately causing the injury in question. *Jacob v. City of New York*, 315 U. S. 752. Mr. Justice

CARDOZO, in *Cortes v. Baltimore Insular Line*, 287 U. S. 367, in construing the Jones Act, said:

"Congress did not mean that the standards of legal duty must be the same by land and sea. Congress meant no more than this, that the duty must be legal, *i. e.*, imposed by law; that it shall have been imposed for the benefit of the seaman, and for the promotion of his health or safety; and that the negligent omission to fulfill it shall have resulted in damage to his person. When this concurrence of duty, of negligence and of personal injury is made out, the seaman's remedy is to be the same as if a like duty had been imposed by law upon carriers by rail."

The court erred in dismissing the complaint and entering judgment. The judgment is therefore reversed, with directions to the trial court to overrule the motion to dismiss and compel an answer to the complaint.

*Reversed and remanded with directions.*

O'CONNOR, P. J., and NIEMEYER, J., concur.