153 So.2d 81 (1963)
David P. APPERSON
v.
UNIVERSAL SERVICES, INC. and Travelers Insurance Company.
No. 5832.
Court of Appeal of Louisiana, First Circuit.
May 3, 1963.
Gamble & Gamble, by Harry P. Gamble, III, New Orleans, for appellant.
Aycock, Horne, Caldwell & Coleman, by John E. Coleman, Jr., Franklin, for appellees.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
HERGET, Judge.
Plaintiff, David P. Apperson, appealed from a judgment dismissing his suit wherein the Trial Court sustained a motion for summary judgment filed on behalf of defendants, Universal Services, Incorporated and Travelers Insurance Company.
The Trial Court in its written reasons for judgment scholarly presents the issues, its views and conclusions as follows:
"The plaintiff, David P. Apperson, instituted this action for workmen's compensation against his employer, Universal Services, Inc., and his employer's workmen's compensation insurer, Travelers Insurance Company, to recover the compensation provided by our law for total and permanent disability.
"The defendants filed an exception of no cause of action and a motion for summary judgment. Both are based on the contention that the plaintiff's occupation was that of a seaman at the time of his alleged injury and that our State's Workmen's Compensation laws are inapplicable to support his action because the federal Jones Act provides the exclusive remedy.
"In Article II of his petition plaintiff alleged that:

*82 "`Plaintiff was employed by defendant as a chef steward, and in his capacity, defendant sent plaintiff to Zapata Offshore Company's rig "Vinegarron" in Galveston Bay on January 27, 1961, where plaintiff worked until February 10, 1961; that before leaving the rig, plaintiff was instructed by defendant to drive to defendant's home office in Morgan City, Louisiana, to drop off rig reports and laundry, which plaintiff did, and while in Morgan City, said plaintiff was invited to dine with plaintiff's supervisors, after which he departed from Morgan City, at 11:00 O'Clock P.M. on the same day, that is, February 10, 1961; that after leaving Morgan City and upon reaching a point one mile east of Bayou Boeuf, Assumption Parish, on U. S. Highway 90, Melvin Gaspard, Jr., drove his automobile into the front of plaintiff's 1961 Thunderbird, causing plaintiff severe and serious permanent personal injury.'
"The defendants submitted the affidavits of two officials of Universal Services, Inc. setting forth that plaintiff was employed as a Chef Steward on the offshore rig `Vinegaron' in Galveston Bay, Texas, and that his duties consisted generally in operating the kitchen and living quarters of the rig.
"The arguments submitted by the litigants confine the dispute solely to the nature of plaintiff's employment; they do not take into consideration the nature of the specific mission that plaintiff alleges he was on at the time of his alleged injury as affecting the issue. Likewise, they apparently assume that the rig in question is of the usual type used in offshore explorations for the recovery of minerals and that it was so engaged at the time of plaintiff's employment, in navigable waters of the United States.
"The defendants have cited a number of decisions of the Federal and our own State's courts holding that the remedies provided for in the Jones Act offer the exclusive remedy available to seamen for injuries received in the course of their employment. These remedies exclude proceedings under the States' Workmen's Compensation laws.
"The plaintiff has cited the case of Beadle vs. Massachusetts Bonding & Insurance Co., [La.App.] 87 So.2d 339, and contends that his claim falls within the `twilight zone' doctrine recognized and applied in that case. This is so, he points out, because he was nowhere near the situs of his employment when he received his injuries, nor was he upon navigable waters. He claims that being on land is an important factor in determining the nature of his action.
"This argument does not appear to carry much weight because the many decisions on the point turn upon the nature of the claimant's employment rather than the place where he was hurt. A seaman's claim under the Jones Act is not barred because he received his injuries on land if his duties called him there.
"In the Offshore Company vs. Robison case, [5 Cir.] 266 F.2d 769, the Court illustrated with citations the loose definition of a seaman. Substantially, it concluded that one who regularly works in the furtherance of the business of a vessel is a seaman, and that an object that floats is a vessel, whether it is engaged in navigation, or not. The opinion said in part:
"`(3) There are common denominators in Gianfala, Bassett, Summerlin, Wilkes and Gahagan decisions. (1) The claimants are not ordinarily thought of as "seamen" aboard "primarily in aid of navigation", although *83 they may serve the vessel in the sense that the work they perform fits in with the function the vessel serves. Gianfala was a member of a drilling crew on a submersible barge, Summerlin a fireman on a derrick, Wilkes a common laborer on a dredge, Gahagan a deckhand on a dredge. They had absolutely nothing to do with navigation, as such, nothing to do with the operations or welfare of a vessel in the sense that a vessel is a means of transport by water, and were not members of a ship's company in the sense that ship's cook or carpenter are necessary or appropriate members of a ship's complement. But in the light of the function or mission of the special structure to which they were attached, they served in a capacity that contributed to the accomplishment of its mission in the same way that a surgeon serves as a member of the crew of a floating hospital. The Bassett decision is the only one of the four cited in which there was judicial sanction of the requirement that the Jones Act seaman must be aboard "primarily in aid of navigation", and in that case the question at issue was the sufficiency of the evidence to justify a holding under the Longshoremen's Act. (2) The "vessels" were not conventional vessels but special-purpose structures that in one case was on the bottom of the sea. In other words, under the Jones Act a vessel may mean something more than a means of transport on water.
"`Senko v. La Crosse Dredging Corp., 1957, 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404, rehearing denied 353 U.S. 931, 77 S.Ct. 716, 1 L.Ed.2d 724 resolved some of the doubts the per curiam opinion in Gianfala raised. Senko was a handyman on a dredge. The dredge was anchored to shore and was used as a stationary earth-removing machine. He had applied to his union (Common Laborer's Union) for a job. The foreman of a construction gang assigned him to a job as "deckhand" or "laborer" on the dredge. Senko worked an eight hour shift, ran errands on shore, was paid by the hour, lived at home, drove back and forth each day, and brought his own meals to work. He had no duties connected with moving the dredge. Senko was injured ashore while placing a signal lantern from the dredge in a shack on land. He filed suit under the Jones Act in an Illinois state court. The jury returned a verdict in his favor, but it was set aside on appeal for lack of evidence to support a finding that he was a member of the crew. The Supreme Court reversed the holding and reiterated its position that such cases present a question of fact for the jury to decide. The majority opinion clarifies the Bassett holding:
"`As we have said before, this Court does not normally sit to re-examine a finding of the type that was made below. We believe, however, that our decision in South Chicago Coal & Dock Co. v. Bassett, supra, has not been fully understood. Our holding there that the determination of whether an injured person was a "member of a crew" is to be left to the finder of fact meant that juries have the same discretion they have in finding negligence or any other fact. The essence of this discretion is that a jury's decision is final if it has a reasonable basis, whether or not the appellate court agrees with the jury's estimate.
"`Because there was testimony introduced by the petitioner tending to show that he was employed almost solely on the dredge, that his duty was primarily to maintain the dredge during its anchorage and for its future trips, and that he would have a significant navigational function when the dredge was put in transit, we hold there was sufficient evidence in the record to support the finding that petitioner *84 was a member of the dredge's crew. cf. Gianfala v. Texas Co., 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 775, reversing 5 Cir., 222 F.2d 382. Accordingly, we reverse the decision below.'"
"`In finding support for the jury finding, the majority took into consideration Senko's duty "to maintain the dredge during its anchorage and for its future trips". This, the majority felt, "would have a significant navigational function when the dredge was put in transit". Substantially, all of the petitioner's duties were performed on or for the dredge and therefore "a normal inference is that the petitioner was responsible for its seaworthiness". We take the phrase "significant navigational function" to mean something less than the phrase "aboard naturally and primarily in aid of navigation"'."
"Plaintiff's employment falls within these definitions.
"The `twilight zone' doctrine had its origin in the case of Davis vs. Department of Labor [and Industries of Washington] and Industries of Washington, 317 U.S. 249, 63 S.Ct. 225 [87 L.Ed. 246]. It recognized an area of overlapping jurisdiction between the federal and state courts, where a harbor worker could elect to pursue his claim in either.
"For a case to come within this doctrine it must have a `local' aspect which sets it apart from the general operation of maritime laws.
"The `local' aspect depended upon here is not the nature of plaintiff's employment, but the place where he claims he was hurt.
"As we have already pointed out, the place where a seaman receives his injuries is not the criterion that determines the nature of his remedy.
The nature of his employment is what controls.
"Undoubtedly, plaintiff's employment falls within the definitions quoted above. He was therefore a seaman.
"Our Supreme Court, in the case of Ellis vs. Travelers Insurance Company et al, 241 La. 433, 129 So.2d 729, and the Fourth Circuit Court of Appeal in the cases of Berner vs. Oil Transport Company, Inc. et al, [La. App.] 126 So.2d 731, and Narcisse vs. American Sugar Refining Company, [La.App.] 128 So.2d 689, had excellent opportunities to invoke the `twilight zone' doctrine but declined to do so.
"In these cases, our State Courts simply determined that the occupations involved were covered by a proper Federal Statute and refused to apply the provision of our State's Workmen's Compensation laws even though the specific injuries sued upon might have fallen within the doctrine.
"In effect, the holding in Beadle vs. Massachusetts Bonding & Insurance Company was repudiated.
"It necessarily follows, therefore, that plaintiff's claim under our State's Workmen's Compensation laws must be rejected. The defendants are entitled to have their exception of no cause of action sustained, or their motion for a summary judgment granted. The granting of the latter motion appears to be the proper remedy as it makes a final determination of the issues raised by the pleadings.
"For these reasons, therefore, let there be judgment granting the defendants' motion for a summary judgment dismissing plaintiff's suit at his costs."
Concededly, the so-called "twilight zone" doctrine announced by the courts has resulted *85 in making difficult rationalization of the decisions wherein the courts make application of the doctrine to the factual issues.
Historically, the first instance testing the constitutionality of the application of the States' Workmen's Compensation Laws to coverage for injuries maritime in nature was presented to the United States Supreme Court in the case of Southern Pacific Company v. Jensen (1917), 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086. The case presented the factual issue wherein a longshoreman was killed on the steamer's gangway in the harbor at New York while engaged in handling cargo between the ship and the pier. An award was made under the New York Workmen's Compensation Act which was affirmed in the lower courts, however, on appeal, the United States Supreme Court reversed the decision predicated on its conclusion exclusive jurisdiction under the Constitution of the United States of all civil cases of admiralty and maritime was vested in the Federal district courts, the State's Workmen's Compensation Act being in conflict with the Constitution of the United States the Legislature of the State of New York had exceeded its authority.
The Congress amended the United States Judicial Code so as to permit States' Workmen's Compensation laws to be applicable to injuries sustained by those engaged in maritime employment. This action on the part of the Congress was, without question, an intentional effort to legislatively change the doctrine announced by the Supreme Court of the United States in the Jensen case, supra.
In Knickerbocker Ice Company v. Stewart, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834, the United States Supreme Court, in holding such enactment of the Congress to be unconstitutional, said:
"In Southern Pacific Co. v. Jensen (May, 1917) 244 U.S. 205, 37 Sup.Ct. 524, 61 L.Ed. 1086, L.R.A.1918C, 451, Ann.Cas.1917E, 900, we declared that under section 2, article 3, of the Constitution (`The judicial power shall extend to * * * all cases of admiralty and maritime jurisdiction'), and section 8, article 1 (Congress may make necessary and proper laws for carrying out granted powers), `in the absence of some controlling statute the general maritime law as accepted by the federal courts constitutes part of our national law applicable to the matters within admiralty and maritime jurisdiction'; also that `Congress has paramount power to fix and determine the maritime law which shall prevail throughout the country.' And we held that, when applied to maritime injuries, the New York Workmen's Compensation Law conflicts with the rules adopted by the Constitution and to that extent is invalid. `The necessary consequence would be destruction of the very uniformity in respect of maritime matters which the Constitution was designed to establish, and freedom of navigation between the states and with foreign countries would be seriously hampered and impeded.'

* * * * * *
"As the plain result of these recent opinions and the earlier cases upon which they are based, we accept the following doctrine: The Constitution itself adopted and established, as part of the laws of the United States, approved rules of the general maritime law and empowered Congress to legislate in respect of them and other matters within the admiralty and maritime jurisdiction. Moreover, it took from the states all power, by legislation or judicial decision, to contravene the essential purposes of, or to work material injury to, characteristic features of such law or to interfere with its proper harmony and uniformity in its international and interstate relations. To preserve adequate harmony and appropriate *86 uniform rules relating to maritime matters and bring them within control of the federal government was the fundamental purpose; and to such definite end Congress was empowered to legislate within that sphere.

* * * * * *
"Having regard to all these things, we conclude that Congress undertook to permit application of workmen's compensation laws of the several states to injuries within the admiralty and maritime jurisdiction, and to save such statutes from the objections pointed out by Southern Pacific Co. v. Jensen. It sought to authorize and sanction action by the states in prescribing and enforcing, as to all parties concerned, rights, obligations, liabilities and remedies designed to provide compensation for injuries suffered by employes engaged in maritime work." (Emphasis supplied)
"And, so construed, we think the enactment is beyond the power of congress. * * *"
In the instant case both Plaintiff and Defendants concede Plaintiff is a seaman. Accordingly, succinctly stated, the issue presented by this appeal is, Can a seaman sue his employer under the State Workmen's Compensation Act for injuries sustained by him allegedly within the scope of his employment? The Courts, no less than the Congress, are restricted by the Constitution of the United States. The Congress could not constitutionally enact a statute providing injuries sustained by seamen within the scope of their employment might be redressed under States' Workmen's Compensation laws; neither can the courts so decree. For, without question, under the alleged facts in this case it is impossible not to conclude the redress for such injury is exclusively vested by the Constitution of the United States in the Federal Courts and Plaintiff must seek redress under the Jones Act. Clearly there is no twilight zone in which Plaintiff may seek relief under our Workmen's Compensation Law for the factual situation presents an issue wherein the Constitution of the United States obliterates the right of the State to grant to a seaman injured within the scope of his employment relief under the State Workmen's Compensation Act, making exclusive the Federal Courts the forum to Plaintiff.
Insofar as the doctrine announced by this Court in Beadle v. Massachusetts Bonding & Insurance Co., La.App., 87 So.2d 339 is in conflict with our pronouncement herein, same is overruled.
Judgment affirmed.