HASKELL GREEN, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Schadler Enterprises *et al.*, Appellees).

Third District (Industrial Commission Division)   No. 3—98—0009WC

Opinion filed August 17, 1999.—Rehearing denied October 13, 1999.

William G. Gillies, Jr., of McCarthy, Callas, Fuhr & Ellison, of Rock Island, for appellant.

Jill A. Baker and Martin T. Spiegel, both of Debboli, Millman & Spiegel, of Chicago, for appellees.

JUSTICE RAKOWSKI delivered the opinion of the court:

This case raises a question of jurisdiction involving the tension between competing policies of federal and state law. The question is whether claimant Haskel Green, an injured seaman, may pursue workers' compensation benefits under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1998)) or whether he is limited to benefits under federal law, specifically, the Merchant Marine Act (Jones Act)[1] (46 U.S.C. app. § 688 (1994)). The arbitrator found that the Jones Act was claimant's exclusive means of recovery, precluding application of the Workers' Compensation Act. Adopting the arbitrator's decision, the Industrial Commission (Commission) affirmed, a decision that was confirmed on administrative review.

Although the Commission's decision will cause claimant to fall into a void of coverage lying between federal and state law remedies, we nonetheless find that claimant's status as a seaman precludes application of the Act in this case. We therefore affirm.

## I. Background

Claimant was employed by Schadler Enterprises and Joe Schadler (collectively employer) as an entertainer on employer's Queen of Hearts Showboat (Queen of Hearts). The Queen of Hearts is a 400-passenger excursion boat. It was docked in Moline, Illinois, and traveled the Mississippi and the Ohio Rivers. Dinner cruises lasted about 2½ hours and traversed 15 to 16 miles. The longest cruises stretched as far as 75 to 100 miles.

Claimant began working for employer in 1990, at which time he also signed a contract. Claimant typically performed his show, the "Buddy Green Show," on dinner cruises. His contract required him to be available for two shows a night, six nights a week. Claimant did not sleep or eat on the Queen of Hearts; nor did he have a dressing room.

In addition to performing on the boat, claimant did promotional work for employer that took him on land. He recorded radio and television commercials to promote the Queen of Hearts, requiring some work to be performed on land as well as on the boat. He also photographed some of employer's attractions including the Queen of Hearts, a tram on Arsenal Island, and the Jubilee. These photographs were placed in pamphlets advertising employer's attractions. Other

---

[1]The Merchant Marine Act derived its more commonly known name from its sponsor, Wesley L. Jones. 2 M. Norris, The Law of Seamen § 30:3, at 328 n.22 (4th ed. 1985).

land-based work included positioning guests boarding the boat for photographs during the 1990 showboat season, negotiating the photograph development agreement for the development of these photographs, and making a phone call on behalf of the employer regarding a dispute. However, employer did not reimburse claimant for these extra services.

Claimant further claimed that he performed his show on land both during the off-season and a couple of times during the season at employer's request. However, the testimony of employer and Robin Lindley of Quad City Attractions indicates that, at the most, employer directed or paid claimant to perform two shows prior to 1991 out of an approximate total of 14 shows that claimant performed on land while Ms. Lindley organized and paid claimant for almost all of the other land-based shows. Claimant contracted and dealt separately with Ms. Lindley. The only benefit realized by employer from the shows he did not arrange was that those who saw them might book cruises on the Queen of Hearts through Ms. Lindley's Quad City Attractions business. Ms. Lindley testified that she was not reimbursed by employer and that employer was not a party to any contracts between her and claimant.

On September 23, 1993, claimant experienced low back pain while doing an Elvis Presley imitation during a performance. On October 9, 1993, during a dinner cruise performance, claimant again suffered severe low back pain and spasms, causing him to collapse on stage. Following the accident, he began treatment with a neurosurgeon and subsequently underwent back surgery and physical therapy. Claimant has not been released to return to work.

Claimant received some benefits under the Jones Act. Specifically, he has received approximately $1,500 in maintenance and approximately $37,000 in cure for medical bills.

## II. Analysis

As stated at the beginning, this case reveals the tension in determining whether an injured maritime employee is limited to recovery under the Jones Act or whether he can seek workers' compensation under Illinois law. In answering this question, we first conclude that claimant is a seaman and that the Jones Act would therefore apply exclusively. We, however, then address claimant's contention that he falls into a "twilight zone" of jurisdiction and that, as a result, he should be entitled to workers' compensation benefits. This argument, which has been made numerous times before other courts, must be rejected. Although we believe this case presents important reasons to permit recovery under the workers' compensa-

tion laws of Illinois, like the courts before us, we conclude that we are without the power to do so.

## A. *The Jones Act and Claimant's Seaman Status*

In his reply brief, claimant seemingly admits that he is a seaman even though he makes a great effort to outline all the land-based work he allegedly performed for employer. Nevertheless, because we ultimately conclude that injured seamen cannot recover under the Workers' Compensation Act, we therefore elect to give his status careful consideration.

Prior to 1920, seamen could only recover pursuant to general maritime law as accepted by the federal courts. *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 215, 61 L. Ed. 1086, 1098, 37 S. Ct. 524, 528-29 (1917); 2 M. Norris, The Law of Seamen § 30:2, at 326 (4th ed. 1985) (hereinafter The Law of Seamen). Those remedies included maintenance and cure and damages for injuries caused by the unseaworthiness of a vessel. *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354, 132 L. Ed. 2d 314, 328, 115 S. Ct. 2172, 2183 (1995). However, in 1920, Congress promulgated the Jones Act to provide seamen the additional right to seek damages for negligence. Part (a) of the Jones Act provides:

> "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply ***." 46 U.S.C. app. § 688 (1994).

■ Conspicuously missing from the Jones Act is a definition of "seaman." Consequently, the task of defining the facts and circumstances under which a worker is considered to be a seaman has been left to the courts both before and after the Jones Act was enacted. Recently, the Supreme Court reviewed the various approaches that have developed and configured the best aspects of these approaches into a two-prong test for determining seaman status. *Chandris, Inc.*, 515 U.S. at 368-69, 132 L. Ed. 2d at 337-38, 115 S. Ct. at 2190. First, the " 'employee's duties must "contribut[e] to the function of the vessel or to the accomplishment of its mission." ' " *Chandris, Inc.*, 515 U.S. at 368, 132 L. Ed. 2d at 337, 115 S. Ct. at 2190, quoting *Offshore Co. v. Robinson*, 266 F.2d 769, 779 (5th Cir. 1959). This requirement is broad, as the Court noted: " 'All who work at sea in the service of a ship' are *eligible* for seaman status." (Emphasis in original.) *Chandris, Inc.*, 515 U.S. at 368, 132 L. Ed. 2d at 337, 115 S. Ct. at 2190, quoting *McDermott International, Inc. v. Wilander*, 498 U.S. 337, 354, 112 L. Ed. 2d 866, 882, 111 S. Ct. 807, 817 (1991). The second prong requires that the employee must have a substantial connection in both

duration and nature to a vessel or an identifiable group of vessels in navigation. *Chandris, Inc.*, 515 U.S. at 368, 132 L. Ed. 2d at 337, 115 S. Ct. at 2190. The Court explained the significance of this inquiry, stating:

"The fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea." *Chandris, Inc.*, 515 U.S. at 368, 132 L. Ed. 2d at 337, 115 S. Ct. at 2190.

The substantial connection requirement developed as result of certain federal courts' *de facto* abandonment and the Supreme Court's ultimate rejection of the "aid in navigation" test, which required the worker to contribute to the vessel's navigation. *Wilander*, 498 U.S. at 343-45, 112 L. Ed. 2d at 874-76, 111 S. Ct. at 811-12; see E. Bull III, *Seaman Status Revisited: A Practical Guide to Status Determination*, 6 U.S.F. Mar. L.J. 547, 562-73 (1994) (discussing certain circuit courts' approaches to or departure from the "aid in navigation" test); see also 1 T. Schoenbaum, Admiralty and Maritime Law § 6-9, at 257 (2d ed. 1994) (hereinafter Maritime Law) (concluding that the Court rejected the "aid in navigation" test on three bases—past authorities' usage of "seaman" as a term of art, congressional intent, and the Court's own case law). In abandoning the "aid in navigation" requirement, the Supreme Court observed that many courts had conferred seaman status upon persons who performed sundry jobs that were more specific to the furtherance of the vessel's enterprise than they were to the vessel's navigation. *Wilander*, 498 U.S. at 345, 112 L. Ed. 2d at 876, 111 S. Ct. at 812. Such cases found a magician, musician, cook, waiter, engineer, hairdresser, barber, radio operator, telephone operator, chambermaid, and carpenter to be seamen. See *Wilander*, 498 U.S. at 344, 112 L. Ed. 2d at 875, 111 S. Ct. at 812; *Bunn v. Global Marine, Inc.*, 428 F.2d 40 (5th Cir. 1970); *Brinegar v. San Ore Construction Co.*, 302 F. Supp. 630 (E.D. Ark. 1969); *McAfoos v. Canadian Pacific Steamships, Ltd.*, 143 F. Supp. 73 (S.D.N.Y. 1956); 1 Maritime Law § 6-9, at 257; 2 The Law of Seamen § 30:7, at 354.

When applying the two prongs, the court must weigh the total circumstances of the employee's employment. *Chandris, Inc.*, 515 U.S. at 370, 132 L. Ed. 2d at 338, 115 S. Ct. at 2190. In doing so, consideration of the second prong ensures that those employees who satisfy the first prong by "doing the ship's work" "have the requisite employment-related connection to a vessel in navigation." *Chandris, Inc.*, 515 U.S.

at 369, 132 L. Ed. 2d at 338, 115 S. Ct. at 2190. As such, the test will satisfy the ultimate concern of whether the individual is actually a sea-based employee or merely a land-based employee who happens to be working on a vessel at a given time. See *Chandris, Inc.*, 515 U.S. at 370, 132 L. Ed. 2d at 338, 115 S. Ct. at 2190-91.

■ Application of the two-prong test in this case leads us to conclude that claimant is a seaman within the context of his employ with employer. First, although it cannot be said that claimant contributed to the "function" of the Queen of Hearts, claimant clearly had a vital role in the "accomplishment" of her mission. Simply put, claimant provided the entertainment on a showboat. Second, considering that the fundamental purpose of the substantial connection requirement is to preclude application of the Jones Act to those who only have a transitory or sporadic connection to a vessel in navigation and who are not regularly exposed to the perils of the sea, we find the factual circumstances here illustrate a substantial connection in both duration and nature between claimant and the Queen of Hearts. Claimant's tenure on the Queen of Hearts spanned nearly four seasons. Each season claimant was required to be available for two dinner shows a night, six nights a week. The shows lasted about 2½ hours, traversing 15 to 16 miles on the navigable waterways of either the Mississippi or Ohio River. Longer cruises spanned as far as 75 to 100 miles. Under these facts, we believe claimant's connection to a vessel in navigation was not sporadic or transitory but, rather, was substantial, causing him to be regularly exposed to the perils of the sea. As such, we agree with the Commission's conclusion that claimant is a seaman and therefore find that it is not against the manifest weight of the evidence. See *Chandris, Inc.*, 515 U.S. at 369, 132 L. Ed. 2d at 338, 115 S. Ct. at 2190 (determining seaman status in conjunction with the appropriate standard is a question left to the fact finder); *Manis v. Industrial Comm'n*, 230 Ill. App. 3d 657, 660 (1992) (reviewing court will only disturb the Commission's determination of fact where it is against the manifest weight of the evidence). *Cf. Thompson v. Casino Magic Corp.*, 708 So. 2d 878, 883 (Miss. 1998) ("change person" working on a floating casino found not to be a seaman because her relationship with the vessel was too temporal where she only worked on it when it was docked and consequently was not exposed to the perils of the sea).

We note that, at most, the record only shows that claimant performed twice on land upon employer's request. Instead, all the other land-based shows were arranged by Ms. Lindley of Quad City Attractions. That employer inured an indirect benefit in that some who saw claimant's road shows might have booked reservations on the

Queen of Hearts did not transform claimant's work for Ms. Lindley into work for employer. Moreover, the amount of time claimant spent on land taking photographs or working on other promotional work was minimal. Consequently, we discount claimant's road shows and other land-based work as insignificant in light of the criteria set out above. See *Chandris, Inc.*, 515 U.S. at 371, 132 L. Ed. 2d at 339, 115 S. Ct. at 2191 (an appropriate rule of thumb is that a worker who spends less than approximately 30% of his work time on a vessel is not a seaman); see also E. Bull III, *Seaman Status Revisited: A Practical Guide to Status Determination*, 6 U.S.F. Mar. L.J. 547, 592-93 (1994) (although percentage evidence is not conclusive, the worker must perform a significant part of his work aboard a vessel). The next question we turn to is whether claimant's seaman status limits recovery against employer to those remedies provided under the Jones Act.

## B. *Exclusive Jones Act Jurisdiction*

Before Congress enacted the Jones Act in 1920 and when the development of maritime law was left to the federal courts, the United States Supreme Court decided the seminal maritime case of *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 61 L. Ed. 1086, 37 S. Ct. 524 (1917). In *Jensen*, a stevedore responsible for loading and unloading ships at a dock was fatally injured on a gangway between a ship and the shore. The fatally injured stevedore was not covered by any federal law at the time. Consequently, his widow sought compensation under the state's workers' compensation laws.

In determining that the state's workers' compensation laws were constitutionally precluded from applying to decedent's death, the Court observed that section 2 of article III of the United States Constitution extended the judicial power of the United States to "all Cases of admiralty and maritime Jurisdiction" (U.S. Const., art. III, § 2) while section 8 of article I of the Constitution provides Congress with the power "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof" (U.S. Const., art. I, § 8). *Jensen*, 244 U.S. at 215, 61 L. Ed. at 1098, 37 S. Ct. at 528-29. Based upon these provisions and its prior decisions, the Court stated it was well settled that "Congress has paramount power to fix and determine the maritime law which shall prevail throughout the country" and that "in the absence of some controlling statute the general maritime law as accepted by the federal courts constitutes part of our national law applicable to matters within the admiralty and maritime jurisdiction." *Jensen*, 244 U.S. at 215, 61 L. Ed. at 1098, 37 S. Ct.

at 528-29. The Court acknowledged that state law will necessarily affect, change, or modify maritime law to some degree. *Jensen*, 244 U.S. at 216, 61 L. Ed. at 1098, 37 S. Ct. at 529 (providing examples that a lien may be placed upon a vessel pursuant to state statute, pilotage fees may be fixed by state law, and wrongful death actions may be provided under state law); but see *Lindgren v. United States*, 281 U.S. 38, 74 L. Ed. 686, 50 S. Ct. 207 (1930) (Court held seamen could no longer maintain a state wrongful death action after the Jones Act was enacted). However, it went on to reason that it "could not have been intended to place the rules and limits of maritime law under the disposal and regulation of the several States, as that would have defeated the uniformity and consistency at which the Constitution aimed on all subjects of a commercial character affecting the intercourse of the States with each other or with foreign states." *Jensen*, 244 U.S. at 215, 61 L. Ed. at 1098, 37 S. Ct. at 528. No state "legislation is valid if it contravenes the essential purpose expressed by an act of Congress or works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations." *Jensen*, 244 U.S. at 216, 61 L. Ed. at 1098, 37 S. Ct. at 529. ·

In response to *Jensen*, Congress made two attempts to delegate authority to the states to enable them to cover maritime workers with their respective workers' compensation acts by amending the "savings to suitors" clause of the Judiciary Act of 1789. *Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 717, 65 L. Ed. 2d 458, 461, 100 S. Ct. 2432, 2435 (1980). See also 28 U.S.C. § 1333 (1994) (containing the "saving to suitors" clause in its current form). Nevertheless, attempts to legislatively overrule *Jensen* were repudiated by the Court in *Knickerbocker Ice Co. v. Stewart*, 253 U.S. 149, 64 L. Ed. 834, 40 S. Ct. 438 (1920), and *Washington v. W.C. Dawson & Co.*, 264 U.S. 219, 68 L. Ed. 646, 44 S. Ct. 302 (1924).[2] The Court strongly maintained its position subscribed to in *Jensen* that the Constitution entrusted the subject of maritime law to Congress to deal with according to its discretion—"not for delegation to others." *Washington*, 264 U.S. at 225, 68 L. Ed. at 651-52, 44 S. Ct. at 304. It asserted:

> "To say that because Congress could have enacted a compensation act applicable to maritime injuries, it could authorize the States to do so as they might desire, is false reasoning. Moreover, such an authorization would inevitably destroy the harmony and uniformity

---

[2]Consequently, claimant's argument that the "savings to suitors" clause somehow supports concurrent jurisdiction is patently without merit, as it has twice been rejected by the Supreme Court.

which the Constitution not only contemplated but actually established—it would defeat the very purpose of the grant." *Washington*, 264 U.S. at 225, 68 L. Ed. at 652, 44 S. Ct. at 304.

In *Lindgren*, the Court once again maintained the *Jensen* demarcation line, only this time in the context of the Jones Act. In that case, the Court held a seaman could not maintain a wrongful death action under his state's law. Although it had allowed such an action under the general maritime law, the Court disregarded the past, observing that once the "Congress has acted, the laws of the States, insofar as they cover the same field, are superseded, for necessarily that which is not supreme must yield to that which is." *Lindgren*, 281 U.S. at 46, 74 L. Ed. at 692, 50 S. Ct. at 211.

■ It is the above line of Supreme Court cases that supports the long-standing application of exclusive jurisdiction of the Jones Act to injured seamen. For example, in *Hendriksen v. City of Chicago*, 330 Ill. App. 141 (1947), the court found that the Illinois Workmen's Compensation Act (Ill. Rev. Stat. 1945, ch. 48, par. 138 *et seq.*) could not be applied to a seaman who fell under the ambit of the Jones Act. Upon quoting the above language in *Washington*, the court held that "the Illinois Workmen's Compensation Act could not reach, include nor govern the claims of seamen or members of the crew of a vessel on navigable streams, injured in line of duty." *Hendriksen v. City of Chicago*, 330 Ill. App. 141, 146 (1947). Similarly, in *Apperson v. Universal Services Inc.*, 153 So. 2d 81 (La. Ct. App. 1963), the court asserted that the "[c]ourts, no less than Congress, are restricted by the Constitution of the United States" and if "[t]he Congress could not constitutionally enact a statute providing injuries sustained by seamen within the scope of their employment might be redressed under States' Work[ers'] Compensation laws[,] neither can the courts so decree." *Apperson*, 153 So. 2d at 86. Other courts have also held that the Jones Act is a seaman's exclusive remedy. See, *e.g.*, *Indiana & Michigan Electric Co. v. Workers' Compensation Commissioner*, 184 W. Va. 673, 403 S.E.2d 416 (1991); *Anderson v. Alaska Packers Ass'n*, 635 P.2d 1182 (Alaska 1981); *Bearden v. Leon C. Breaux Towing Co.*, 365 So. 2d 1192 (La. Ct. App. 1979); *Valley Towing Co. v. Allen*, 236 Miss. 51, 64, 109 So. 2d 538, 543 (1959). Thus, it appears clear to this court that claimant is limited to the remedies provided under the Jones Act.

However, because recovery under the Jones Act requires a showing of fault, claimant, like so many other injured seamen who cannot receive adequate compensation under the Jones Act, attempts to borrow the "twilight zone" doctrine developed within the context of the Longshoremen's and Harbor Workers' Compensation Act (Longshoremen's Act) (33 U.S.C. § 901 *et seq.* (1994)) and apply it to this case.

Where the "twilight zone" doctrine is properly invoked in the Longshoremen's Act context, the injured employee may elect to pursue either Longshoremen's Act remedies or state workers' compensation remedies. As will be seen below, however, this doctrine of concurrent jurisdiction has no application to seamen.

C. *The Inapplicability of the "Twilight Zone" Doctrine to Seamen*

At the same time the Supreme Court was invalidating Congress' attempts to delegate compensatory authority to the states, the Court reformed the *Jensen* doctrine by "identifying circumstances in which the subject of litigation might be maritime yet 'local in character,' and thus amenable to relief under state law." *Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 717, 65 L. Ed. 2d 458, 461, 100 S. Ct. 2432, 2435 (1980). In that same vein, Congress in 1927 successfully extended protection to marine workers excluded by *Jensen* from recovering under state workers' compensation laws by enacting the workers' compensation scheme provided in the Longshoremen's Act.[3] *Sun Ship, Inc.*, 447 U.S. at 717-18, 65 L. Ed. 2d at 461, 100 S. Ct. at 2435. Congress also integrated the *Jensen* demarcation line into the Longshoremen's Act as the boundary where federal remedies gave way to state remedies. See *Davis v. Department of Labor*, 317 U.S. 249, 256, 87 L. Ed. 246, 250, 63 S. Ct. 225, 229 (1942). As such, where the subject matter of the suit was "maritime but local," application of state law remedies was constitutionally permissible. The portion of the Longshoremen's Act so providing stated that " '[c]ompensation shall by payable [for an injury] ... occurring upon the navigable waters of the United States ... if recovery ... through workmen's compensation proceedings may not validly be provided by State law.' 44 Stat. 1426." *Sun Ship, Inc.*, 447 U.S. at 717-18, 65 L. Ed. 2d at 461, 100 S. Ct. at 2435. From this statutory language, the "twilight zone" was ultimately born.

The boundary between where federal remedies gave way to state law remedies proved to be murky at best in individual cases. As such, the costs were high if the wrong forum was chosen given the various consequence of an incorrect choice, such as the running of a statute of limitations. *Davis*, 317 U.S. at 254, 87 L. Ed. at 249, 63 S. Ct. at 228. "After a decade and a half during which there had not been formulated 'any guiding, definite rule to determine the extent of state power in advance of litigation,' [citation], the Court determined that the border between [the Longshoremen's Act] and state compensation schemes

---

[3] This compensation act was substantially modeled after New York's workers' compensation act. G. Grant & C. Black, The Law of Admiralty § 6-46, at 408.

was less a line than a 'twilight zone,' in which 'employees must have their rights determined case by case ***.' " *Sun Ship, Inc.*, 447 U.S. at 718, 65 L. Ed. 2d at 461, 100 S. Ct. at 2435, quoting *Davis*, 317 U.S. at 253, 87 L. Ed. at 248-49, 63 S. Ct. at 227. In *Davis*, the Court effectively established a regime of concurrent jurisdiction within the "twilight zone." *Sun Ship, Inc.*, 447 U.S. at 717-18, 65 L. Ed. 2d at 461, 100 S. Ct. at 2435; *Davis*, 317 U.S. at 253, 87 L. Ed. at 248, 63 S. Ct. at 227. This allowed an injured employee to elect between the Longshoremen's Act or state workers' compensation law if there was doubt as to whether the subject of the litigation was purely maritime and covered under the Longshoremen's Act or maritime but local and therefore compensable under state law. *Davis*, 317 U.S. at 255-56, 87 L. Ed. at 250, 63 S. Ct. at 228-29. In *Calbeck v. Travelers Insurance Co.*, 370 U.S. 114, 8 L. Ed. 2d 368, 82 S. Ct. 1196 (1962), the Court further elaborated as to the extent of the concurrent jurisdiction regime, asserting:

"We conclude that Congress used the phrase 'if recovery *** may not validly be provided by State law' in a sense consistent with the delineation of coverage as reaching injuries occurring on navigable waters. By that language Congress reiterated that the Act reached all those cases of injury to employees on navigable waters as to which *Jensen, Knickerbocker* and *Dawson* had rendered questionable the availability of a state compensation remedy. Congress brought under the coverage of the Act *all such injuries* whether or not a particular one was also within the constitutional reach of a state workmen's compensation law." (Emphasis added.) *Calbeck*, 370 U.S. at 126-27, 8 L. Ed. 2d at 376-77, 82 S. Ct. at 1203.

Consequently, the jurisdictional makeup for shoremen and harbor workers' claims consisted of three "jurisdictional spheres":

"At the furthest extreme, *Jensen* commanded that nonlocal maritime injuries fall under the LHWCA. 'Maritime but local' injuries 'upon the navigable waters of the United States,' 33 U.S.C. § 903(a), could be compensated under the LHWCA or under state law. And injuries suffered beyond navigable waters—albeit within the range of federal admiralty jurisdiction—were remediable only under state law."[4] *Sun Ship, Inc.*, 447 U.S. at 719, 65 L. Ed. 2d at 462, 100 S. Ct. at 2436.

Therefore, the "twilight zone" doctrine grew out of the conundrum

---

[4]After 1972, Congress extended the jurisdiction of the Longshoremen's Act landward beyond the shoreline. This was interpreted as expanding the sphere of concurrent jurisdiction into a sphere that had been viewed as the province of state workers' compensation law. See *Sun Ship, Inc.*, 447 U.S. at 719-20, 65 L. Ed. 2d at 462-63, 100 S. Ct. at 2436.

arising from application of the Longshoremen's Act. Most courts that have considered the applicability of the "twilight zone" doctrine to the Jones Act context have declined to apply it, concluding that the Jones Act exclusively provides the remedies for seamen's work-related injuries. See *Benders v. Board of Governors for Higher Education*, 636 A.2d 1313, 1317-18 (R.I. 1994) (noting that Supreme Court has never abrogated *Jensen* as it relates to seamen covered by the Jones Act); *Indiana & Michigan Electric Co. v. Workers' Compensation Commissioner*, 184 W. Va. 673, 677, 403 S.E.2d 416, 421 (1991) (finding that the Jones Act is the exclusive remedy for seamen and that, as such, West Virginia's workers' compensation act was inapplicable); *Anderson*, 635 P.2d at 1185-86 (observing that "where the facts *** show a claimant engaged in wholly maritime work, the courts have declined to lengthen the shadow of the twilight zone, and have remitted the claimants to their federal remedies"); *Bearden v. Leon C. Breaux Towing Co.*, 365 So. 2d 1192, 1195 (La. Ct. App. 1979) (concluding that "the line drawn by *Jensen* still remains, and because we are dealing with a 'seaman' who may sue under the Jones Act, it is constitutionally mandated that plaintiff *** may not have" workers' compensation benefits, while also asserting that the case presented "a situation which is wholly maritime, far removed from any possible 'twilight zone,' even if such a zone exists for 'seamen' '"); *Apperson v. Universal Services, Inc.*, 153 So. 2d 81, 86 (La. Ct. App. 1963) (holding that since parties concede that claimant is a seaman, "[c]learly there is no twilight zone in which Plaintiff may seek relief under our Work[ers'] Compensation Law for the factual situation presents an issue wherein the Constitution of the United States obliterates the right of the State to grant to a seaman injured within the scope of his employment relief under the State Work[ers'] Compensation Act, making exclusive the Federal Courts the forum to Plaintiff"); *Valley Towing Co. v. Allen*, 236 Miss. 51, 64, 109 So. 2d 538, 543 (1959) (noting that no Supreme Court case has ever applied state law to a "seaman").

■ Likewise, we decline to apply "twilight zone" concurrent jurisdiction to an employee who is a seaman. Arguably there are some important local concerns that would merit application of the Workers' Compensation Act in this case. But the circumstances that necessitated the creation of "twilight zone" jurisdiction in the context of the Longshoremen's Act are not present in the Jones Act context. As discussed above, the Longshoremen's Act was designed to allow application of state workers' compensation law to injured maritime workers under constitutionally permissible circumstances. It was this feature that created the jurisdictional quandary that led to the creation of the "twilight zone." This is not the case under the Jones Act.

The Jones Act clearly defines the class of workers it covers, namely, seamen, and it does not contain any language suggesting it was meant to complement state workers' compensation schemes or any other state law. See *Indiana & Michigan Electric Co.*, 184 W. Va. at 677, 403 S.E.2d at 421. Accordingly, we conclude that where the employee is determined to be a seaman, the Jones Act preempts state law and constrains the seaman to its remedies. *Indiana & Michigan Electric Co.*, 184 W. Va. at 676-77, 403 S.E.2d at 420-21; *Bearden*, 365 So. 2d at 1195; see *Benders*, 636 A.2d at 1317; *Anderson*, 635 P.2d at 1185. See generally C. Davis, *Federal Supersession of State Workers' Compensation Acts As Applied to Jones Act Seamen*, 8 U.S.F. Mar. L.J. 185 (1996) (arguing that doctrines of preemption and supersession preclude application of state workers' compensation laws to seamen). To apply the Illinois scheme of no-fault compensation in a field where Congress specifically provides certain other types of remedies would disrupt the uniform nature of only applying those remedies in that field. This we cannot do under *Jensen* or its progeny. See *Jensen*, 244 U.S. at 216, 61 L. Ed. at 1098, 37 S. Ct. at 529 (no state legislation can validly be applied "if it contravenes the essential purpose expressed by an act of Congress *** or interferes with the proper harmony and uniformity of" maritime law). Unless the Supreme Court creates a "twilight zone" in the Jones Act context and further reforms the *Jensen* doctrine in this respect, the Court's current interpretation of the Constitution precludes us from applying state law in a field where Congress has acted. See *Lindgren*, 281 U.S. at 46, 74 L. Ed. at 692, 50 S. Ct. at 211; *Benders*, 636 A.2d at 1317; see 820 ILCS 305/1 (West 1998) (Illinois Workers' Compensation Act will not apply to employees where federal law provides exclusive remedies).

Claimant nonetheless urges this court to follow two cases where the "twilight zone" concept was applied to cover injured seamen under state workers' compensation acts. In *Maryland Casualty Co. v. Toups*, 172 F.2d 542 (5th Cir. 1949), the worker was both a captain and crew of a vessel that ferried pilots to seagoing vessels coming into and leaving Port Arthur, Texas. On the day the worker died, he was at work on a small dock making fenders for the boat he captained. Somehow, unknown to any witnesses, the worker fell off the dock and drowned. In finding concurrent jurisdiction, the court stated the following:

> "The deceased, under the holdings of the Supreme Court *** was, no doubt, a seaman on a vessel engaged in navigation and in aid of navigation, whose heirs, in the absence of an applicable State Work[ers'] Compensation Act, would be remitted to the Jones Act for redress. But since an action under the Jones Act must be grounded upon negligence, and since in the present case no

negligence of the employer can be shown, the heirs of the deceased would be without remedy under the Act or in admiralty. Such a result is not imperative unless the invocation of the State Compensation Act would 'interfere with the proper harmony or uniformity of that law [admiralty] in its international or interstate relations.' No inharmonious result is here possible. The deceased at the time of his death was working upon the dock making fenders for the use of his small boat. He hauled no interstate or foreign commerce. Neither his vessel nor his work affected the intricate relations that involve the ship, crew, master, owner, cargo, shipper, consignee, or responsibility, or lack of it, under the law of the sea. Neither the activity of the deceased nor the method of compensation agreed upon for his family could have interfered with the proper harmony or the uniformity of the law that prevails, and should prevail, in all substantial relations arising out of maritime commerce, whether interstate or international." *Toups*, 172 F.2d at 546.

Similarly, the Appellate Court of Alabama found concurrent jurisdiction even though the worker was clearly a "seaman." In *Haire v. Devcon International Corp.*, 668 So. 2d 775 (Ala. Ct. App. 1995), claimant was captain of a dredge in Antigua, West Indies, and spent 50% of his time on the dredge and 50% on land. He injured himself when he slipped off a bulldozer located on land. Although the court believed that Congress preempted state workers' compensation remedies by enacting the Jones Act, it nevertheless followed *Toups* and applied the "twilight zone" doctrine to entitle claimant to an action under the state's workers' compensation act. *Haire*, 668 So. 2d at 778-79.

As can be seen, these cases effectively ignore the case law and the concerns that we have discussed above. As such, we reject these cases as unpersuasive and maintain that claimant's seaman status limits his ability to recover for his injuries to the exclusive remedies provided by the Jones Act.

### III. Conclusion

For the reasons discussed above, we affirm the circuit court's confirmation of the Commission's decision.

Affirmed.

McCULLOUGH, P.J., and COLWELL, HOLDRIDGE, and RARICK, JJ., concur.